# FIRST NATIONAL BANK OF BUTTE, Respondent, v. BOYCE (BROWN, Intervenor), Appellants.

[Submitted January 8, 1895. Decided January 14, 1895.]

Attachment—*Second levy under original outstanding writ.*—In the absence of fraud, there is nothing to prevent a second levy by attachment under an outstanding writ upon personal property for a just debt, where such property has once been taken, but afterwards surrendered, by mistake or otherwise, and where no other rights intervene, and the legal owner interposes no protest against such second levy.

Same—*Retaking goods under second levy.*—In the case at bar an attaching creditor released the lien of the attachment, under an agreement that the debtor

would execute an assignment of all his goods and property, making the former a preferred creditor, which assignment was accordingly executed. *Held*, that if the deed of assignment was void by reason of any fraudulent provision therein, such attaching creditor might retake the goods by a second levy under the original writ, and acquire a valid lien, in the absence of fraud, and where no rights intervened between the first and second levy.

SAME—*Right of intervening creditor.*—Where an intervening creditor fails, in his complaint of intervention, to assail an assignment made by the debtor prior to the intervenor's attempt to attach property covered thereby, he is to be regarded as treating the assignment, for the purposes of his intervention, as honest and fair, and by such confession he stands in no position to demand an attachment against such property of his debtor, or to intervene in a suit between a prior attaching creditor and the debtor. (*Elling* v. *Kirkpatrick*, 6 Mont. 119, cited.)

SAME—*Memorandum of costs—Sheriff fees.*—Construing together sections 507 and 508 of the Code of Civil Procedure, providing that the prevailing party shall deliver to the clerk of the court a verified memorandum of the items of costs and necessary disbursements, and that such memorandum need not include the legal fees or costs of any officer of the court, *held*, that a sheriff's expenditures, such as rent bills, keeper's fees, gas bills, water rents, fuel bills, and such other disbursements necessarily made in levying attachment writs, need not be included in such memorandum of costs. (*First Nat. Bank* v. *Neill*, 13 Mont. 377; *Orr* v. *Haskell*, 2 Mont. 350, cited.)

*Appeal from Second Judicial District, Silver Bow County.*

ACTION to recover the amount of a promissory note, in which action Brown intervened. Judgment was rendered for the plaintiff below by McHATTON, J. Affirmed.

Statement of the case by the justice delivering the opinion:

The plaintiff, a national bank of Butte, Montana, sues James R. Boyce, Jr., doing business under the name of J. R. Boyce, Jr., & Co., to recover the amount of a promissory note, dated at Butte, December 11, 1890, for $60,000, payable on demand, with interest at the rate of one per cent per month until paid. The complaint alleges nonpayment, and prays judgment for $60,000, interest, and costs.

Upon February 14, 1891, Lewis Brown filed a complaint in intervention, setting forth that on January 29, 1891, plaintiff bank brought suit against defendant Boyce & Co. for $60,000; that thereafter the said plaintiff, by attachment proceedings, levied upon all the real and personal property of said Boyce, Jr., & Co., and that the sheriff took possession of all such property by virtue of said writ of attachment; that on the date of the levy of said attachment Boyce & Co. was insolvent; that thereafter, and while the sheriff was in possession of said

property, the plaintiff bank agreed with the defendant that if defendant would execute an assignment of all his goods and and property to one D. C. Porter, for the benefit of creditors of defendant, and by said deed of assignment make it, the said plaintiff bank, a preferred creditor for the sum alleged to be due it from said defendant, that it, the said plaintiff, would release and discharge the said attachment, and would withdraw the sheriff who had such goods in charge, and allow the proposed assignee, Porter, to take possession thereof; that the said defendant Boyce & Co., relying upon the promise and agreement of plaintiff bank, thereupon executed and delivered an assignment to said Porter, and that in said deed of assignment said plaintiff bank was made a preferred creditor for the sum alleged to be due it, to wit, $60,000; that said deed of assignment was delivered to said Porter, who entered and took possession of the property of the said Boyce & Co. Intervenor then pleads that he has never accepted the said assignment, and avers that on January 29, 1891, and while the said Porter was in possession of said stock under and by virtue of the assignment, the plaintiff bank accepted the provisions of said assignment; that thereafter, on February 7, 1891, the plaintiff bank, disregarding the promise and agreement made with Boyce & Co., and disregarding the fact that it had accepted the provisions of said deed of assignment, fraudulently caused and procured the sheriff of Silver Bow county to enter in and upon all of the property of defendant Boyce & Co., under and by virtue of a certain pretended writ of attachment, issued in the action originally brought, as aforesaid, by the bank, against Boyce & Co., for the sum of $60,000, "which said writ was the original writ issued in said action, and which writ had been once served by a levy upon the aforesaid goods and personal and real property of said defendant, and which writ was the same that the said sheriff held said goods and property under and by virtue of when the assignment from the said defendant to David C. Porter, in trust for the benefit of creditors, was made"; that on said seventh day of February, 1891, Porter was an employee of the plaintiff bank, and acting under its directions; that on the said 7th of February, and when the said sheriff was instructed to retake possesssion of said property of

said defendant Boyce & Co., the said Porter, disregarding the rights of the creditors for whom he held in trust, and acting in concert with the said First National Bank and the said sheriff, surrendered possession of said goods to the said sheriff; that on the 12th of February, 1891, defendant Boyce & Co. was insolvent, and indebted to the intervenor, Brown, in the sum of $10,178; that on the said 12th of February, the intervenor brought suit for said sum of $10,178, and sued out an attachment, which was placed in the hands of the sheriff, with instructions to levy upon all of the property of defendant Boyce & Co., and that afterwards said writ was so levied, and is now a lien upon said property; that the value of the property of said Boyce & Co. amounts to $60,000, and there is not enough property in the hands of the sheriff, levied upon in the two actions, to satisfy the claim of the plaintiff bank.

. The intervenor further pleads that the writ of attachment in the suit of the plaintiff bank was void and irregular in itself, and wrongfully and fraudulently levied; that no judgment had been entered in the action of the bank against Boyce & Co., and that though more than ten days have elapsed since service of summons therein no answer or demurrer has been filed in said action by said defendant; that said attachment of plaintiff bank in said action appears in the record to be a lien upon the property of defendant prior to the lien of the intervenor.   Intervenor denied that Boyce & Co. owed the bank $60,000, but admitted an indebtedness of $35,000.   The intervenor concludes his complaint with the averment that by reason of the fraud, collusion, and conspiracy of said plaintiff, the said defendant, and the said sheriff of Silver Bow county, the pretended levy of attachment made in the action of the First National Bank of Butte against the said Boyce & Co. was void and irregular, and that by reason of said void and irregular levy the rights of the intervenor are endangered, delayed, and postponed, and that unless the said pretended levy, void and fraudulent in itself, is vacated and set aside, intervenor will have no means of satisfying any judgment he may procure against the defendant.   He therefore prays that the attachment, and the service thereof, and the lien thereof, be

quashed and set aside, and that the plaintiff bank be decreed to have no rights thereunder, and for further relief.

The First National Bank of Butte, plaintiff, answered the complaint of intervention, denying that after Porter took possession as assignee that plaintiff accepted the provisions of said assignment, or did any thing, either accepting or refusing to accept the said assignment; denied that plaintiff bank, disregarding the agreement made with the defendant, Boyce & Co., or disregarding the fact that it had accepted the provisions of said deed of assignment, fraudulently caused the sheriff to take possession of the stock of goods of defendant, Boyce & Co., under and by virtue of a pretended writ issued in any action whatever; denied that the assignee, Porter, as assignee, was acting under the directions of the plaintiff bank in the matter of such assignment; denied that Porter, in disregard of the rights of the creditors, or acting in concert with the plaintiff bank and the sheriff, surrendered possession of the goods to the said sheriff; denied that any writ of attachment issued in favor of the intervenor, as alleged, constituted a lien upon the property described. Specific denials of other material averments of the complaint were also pleaded.

The plaintiff then sets forth these facts: That it did make an attachment upon the property of defendant Boyce & Co., in the first instance, and subsequently agreed to accept an assignment of the property attached, with the understanding that plaintiff was to be a preferred creditor in such assignment to the amount of its claim; that the defendant Boyce & Co. made such assignment, and included several other claims therein, among which was the claim of John H. Curtis for the sum of about $15,000; that at the time of such assignment this plaintiff believed that the claim of Curtis, secured by such assignment, was valid, and honestly owing from the defendant Boyce & Co. to the said Curtis, and that at the time of such assignment plaintiff believed that such assignment was honestly and fairly made by the defendant for the purposes therein set forth, but subsequently plaintiff bank discovered that the said assignment was fraudulent and void, in this, "that the claim of the said John H. Curtis, for $15,000, was fraudulent, and that the said James R. Boyce was not indebted

to the said Curtis in said sum, but that the same had been fraudulently included in said assignment for the purpose of securing for the said Curtis a much larger sum of money than was actually due to him from the said Boyce; that at the time of making said assignment this plaintiff did not know of said fraudulent claim, but soon discovered the same, and, as soon as the same was discovered, this plaintiff disavowed and disclaimed the said assignment, and reinstated its attachment, as it had good right to do. Wherefore plaintiff prayed judgment against the defendant as in its complaint prayed for."

To this answer of plaintiff bank the intervenor, Brown, filed a replication, denying that the deed of assignment was void as to the plaintiff bank by reason of any fraudulent provision therein concerning Curtis, or any other person. The replication alleges that the plaintiff bank well knew at the time of making said assignment, and at the time of its acceptance of the same, all of the facts concerning the claim of the said Curtis, mentioned in said answer, and alleges that if there was any fraud in said assignment relating to the claim of Curtis, that the plaintiff had full knowledge thereof, and was a party thereto, at the time of the execution and acceptance of the deed of assignment.

A jury trial was waived, and proof was introduced by the bank in relation to the amount due by the defendant Boyce & Co. under the terms of the promissory note.

Upon the trial the intervenor admitted that the debt, as proven by the bank, was due, and that they would offer no proof to reduce the amount claimed. Intervenor then offered testimony to show the acts of plaintiff in first serving its writ of attachment, then accepting an assignment, then refusing the assignment, and then going back to the writ of attachment, and to prove the general allegations of fraud and collusion between the assignee, the plaintiff, and the sheriff, against the rights of the intervenor. The plaintiff bank objected, upon the ground that the matters were not matters in intervention at all. The court sustained the objection. An exception was taken, and judgment entered on July 23, 1891, in favor of the plaintiff bank, and against the defendant James R. Boyce, Jr., for the sum of $62,298.80, together with costs, amounting to

$1,542.20, taxed against James R. Boyce, Jr. It was further adjudged by the court that the plaintiff bank have judgment against James R. Boyce, Jr., and the intervenor, Brown, for the further sum of $3,047, costs incurred by the plaintiff bank since the fourth day of March, 1891, and prior to July 15, 1891.

*Corbett & Wellcome,* for Appellants.

I. The court erred in sustaining the plaintiff's objection to the testimony offered by the intervenor in support of the allegations of his complaint in intervention, on the ground that the matter so offered was not matter in intervention, and was irrelevant, immaterial, and incompetent. The Montana intervention statutes were copied from the California statutes, and the latter were copied from Louisiana. The two latter states have, by a long line of decisions, established that when property of a defendant has been attached in a suit, subsequent attaching creditors may, by intervention, show that they have a superior privilege in the attached property or that the plaintiff and defendant perpetrated a fraud in combining to have the attachment issued. (*County of Yuba* v. *Adams,* 7 Cal. 35; *Daws* v. *Eppinger,* 18 Cal. 378; 79 Am. Dec. 184; *Horn* v. *Volcano Water Co.,* 13 Cal. 62; 73 Am. Dec. 569; *Dixey* v. *Pollock,* 8 Cal. 570; *Speyer* v. *Ihmels,* 21 Cal. 280; 81 Am. Dec. 157; *Coghill* v. *Marks,* 29 Cal. 673; Pomeroy on Remedies and Remedial Rights, §§ 426–31; *Yale* v. *Hoopes,* 12 La. Ann. 460; *Daujean* v. *Blacketer,* 13 La. Ann. 595; *Gaines* v. *Page,* 15 La. Ann. 108; *White* v. *Hawkins,* 16 La. Ann. 25; *Yale* v. *Hoopes,* 16 La. Ann. 311; *Letchford* v. *Jacobs,* 17 La. Ann. 79; *Ledda* v. *Maumus,* 17 La. Ann. 314; *Field* v. *Harrison,* 20 La. Ann. 411; *Fleming* v. *Shields,* 21 La. Ann. 118; 99 Am. Dec. 719; *Beckworth* v. *Pierce,* 22 La. Ann. 67; *Michel* v. *Sheriff,* 23 La. Ann. 53; *Gilkeson Sloss Commission Co.* v. *Bond,* 44 La. Ann. 841.) The order of procedure in attachment is governed by the validity of the levy, and subsequent valid liens must necessarily take precedence over those prior in point of time but wanting in validity. (*Robinson* v. *Ensign,* 6 Gray, 300; *Culvers* v. *Rumsey,* 6 Ill. App. 598.) A subsequent attaching creditor is not confined to the same grounds of

defense that the debtor might have availed himself of. (Wade on Attachment, § 220.) If attachment creditors accept security, then attachment should be dissolved. (*Hathaway* v. *Davis*, 33 Cal. 161; *Beaudry* v. *Vache*, 45 Cal. 3; *Page* v. *Latham*, 63 Cal. 75.) And this is true no matter what the value of the security may be. (*Page* v. *Latham, supra.*) A creditor who assents to an assignment and accepts the provisions thereof thereby takes security for his debt and cannot maintain attachment. (*Wilke* v. *Cohn*, 54 Cal. 212; *Elbing* v. *Kirkpatrick*, 6 Mont. 119.) Appellant contends that as to the plaintiff in this action, the assignment accepted by him was such and accepted under such circumstances that he could not repudiate the same, or attack it by attachment. When an assent to an assignment is given by a creditor, such assent operates as to such creditor to confirm the conveyance *ab initio*. (Bump on Fraudulent Conveyances, 327; *Halsey* v. *Whitney*, 4 Mason, 206.) And a creditor assenting to a fraudulent assignment, and accepting under it, with a knowledge of the fraud, will not be permitted to attack the assignment for fraud. (*Hone* v. *Hendriques*, 13 Wend. 240; 27 Am. Dec. 204; *Rapalee* v. *Stewart*, 27 N. Y. 314; *Spaulding* v. *Strang*, 38 N. Y. 15; *Adlum* v. *Yard*, 18 Am. Dec. 621, note.) Fictitious debts provided for by an assignment will not make the assignment void against any other than the parties to the fraud. (Bump on Fraudulent Conveyances, 376.) Any matters which a subsequent attaching creditor might urge by a bill in equity to establish the priority of his claim may be urged in intervention. (Pomeroy on Remedies and Remedial Rights, § 430.)

II. The court erred in overruling the intervenor's motion to strike out the cost bill. Costs can only be recovered by a strict compliance with the provisions of the Civil Practice Act. (*Orr* v. *Haskell*, 2 Mont. 350; Code Civ. Proc., §§ 507, 508.) Costs are the expenses of parties, and are distinguished from fees and costs of officers. (Bouvier's Law Dictionary, " Costs.") The sheriff cannot charge costs not mentioned in the statutes. (*Crofut* v. *Brandt*, 58 N. Y. 106; 17 Am. Rep. 213; *McKeon* v. *Horsfall*, 88 N. Y. 430; *Yeil* v. *Stevens*, 48 Cal. 590.) Custodian's fees are not the costs of a court officer, but are the necessary disbursements of the plaintiff in this

action. (See *McDermott* v. *Murphy*, 11 Mont. 122.) The judgment in this action does not decide nor settle the rights of the intervenor, and makes no disposition whatever of his petition, nor mentions the same, and therefore the judgment for costs against the intervenor is improper and unauthorized. (See 1 Black on Judgments, § 1; *Whitwell* v. *Emory*, 3 Mich. 84; 59 Am. Dec. 220; *Mahoning Co. Bank's Appeal*, 32 Pa. St. 158, 160.)

*Forbis & Forbis*, for Respondent.

I. An intervention in attachment proceedings must rest either upon a good defense to the action or a good and anterior claim to the property attached. A subsequent attaching creditor cannot intervene and show that any of the proceedings of a first attachment creditor were informal, irregular, or even voidable. These are the rights of the attachment defendant, and, unless he takes advantage of them, no one else may. (*Brown* v. *Saul*, 4 Mart., N. S., 434; 16 Am. Dec. 175, and note; *Clamageran* v. *Bucks*, 4 Mart., N. S., 487; 16 Am. Dec. 185; *First Nat. Bank* v. *Greenwood*, 79 Wis. 269; *Ward* v. *Howard*, 12 Ohio St. 158; *Horn* v. *Volcano Water Co.*, 13 Cal. 62; 73 Am. Dec. 569; Drake on Attachments, § 273; Wade on Attachments, § 219.) If the intervenor relies upon the fact that the assignment was void, that fact should have been pleaded; if, by some fraudulent conduct on the part of the bank, it had precluded itself from claiming the property otherwise, those facts should have been pleaded. But in that case it would have been necessary to go into a court of equity and have the matter properly adjudicated there. Interventions are not intended to enforce equitable rights, and equities will not be adjusted in such proceedings. (*Dixey* v. *Pollock*, *supra*.) The statute nowhere prohibits an attachment creditor from taking security after the attachment is issued, nor does it declare that attachment proceedings shall be dismissed or annulled because of such action. Even had the bank sued out an attachment when it held security for its debt, that would be an irregularity of which only Boyce could take advantage. The right to urge the irregularity is in Boyce alone, and, being a personal right, the intervenor could not take advantage of

it.  (*Harvey* v. *Foster*, 64 Cal. 296; *Porter* v. *Pico*, 55 Cal. 173; citing, also, in support of the above views: *Deevy* v. *Gray*, 5 Wall. 795; *Mills* v. *Graves*, 38 Ill. 455; 87 Am. Dec. 314; *Schuhman* v. *Garratt*, 16 Cal. 100; Hermann on Estoppel, § 20.)

II.   The court did not err in refusing to retax certain of the costs against the intervenor.   The fact that the plaintiff voluntarily allowed a payment made after suit begun is not attributable to any defense made by the intervenor.   (*McKy-ring* v. *Bull*, 16 N. Y. 297; 69 Am. Dec. 696; *Hook* v. *White*, 36 Cal. 299.)   Had the intervenor desired to plead payment, in cases of payment made after commencement of action, it would have been necessary to do so by supplemental pleading. (*Glascock* v. *Ashman*, 52 Cal. 493.)   The necessity of these costs was passed upon by the court, upon the motion to retax, and such as the court thought improper were disallowed. Affidavits were filed by both contesting parties, and the court, by its judgment, determined what were legal costs, and this should be conclusive of their legality.   (*Hoyt* v. *Selby Smelting etc. Co.*, 90 Cal. 339.)

HUNT, J.—It is conceded by counsel for the plaintiff bank that the defendant Brown had a legal right to intervene for the purpose of trying the issue between the plaintiff bank and the defendant Boyce, as to the amount due upon the note at the date of the commencement of the action by the bank against Boyce.   But it will be observed by the statement of the facts, that upon the trial of the case the intervenor expressly admitted that the amount alleged to be due in the complaint of plaintiff bank, less a payment of $1,927.60, allowed as a credit by the bank, was a just debt, and expressly declined to offer proof to sustain the averments of his complaint denying such indebtedness, or to contradict the testimony of the officer of the plaintiff bank.   This issue of fact being therefore eliminated from the case, it is necessary to determine whether or not the other facts set forth in the intervenor's complaint are sufficient to enable him to intervene in the action pending between the plaintiff bank and the defendant Boyce. We think not.   The original suit of the plaintiff bank against

the defendant Boyce was still pending in the district court, and the original writ of attachment which had been issued in that case was still in the hands of the sheriff of Silver Bow county, at the time of the second levy of such writ. It further appears that no rights intervened between the first levy and the second. The release or the surrender of the property seized under the first levy at the time of the assignment may have been such an abandonment of a lien by attachment that subsequent attaching creditors could claim prior liens had they instituted proceedings to establish such liens before the seizure by the sheriff under the second levy. But, according to the facts in this case, as they are pleaded, we are of opinion that by the actual taking under the second levy made by the sheriff there was created a valid and sufficient attachment lien in the bank's favor. If the assignee had claimed the property, or if the defendant Boyce had, by appropriate proceedings, objected to the second taking under the original writ of attachment, different questions would arise. But, in the absence of fraud, we know of no reason which will prevent a second levy by attachment under an outstanding writ upon personal property for a just debt, where such property has once been taken but afterwards surrendered by mistake or otherwise, and where no other rights intervene, and where the legal owner interposes no protest against such second levy. It follows, therefore, from the facts set forth in the complaint of the intervenor, Brown, that after he had confessed the debt of Boyce to the bank, he no longer had an interest in the matter of litigation. He never claimed to be interested in the note; and the value of the goods seized being insufficient to more than satisfy the lien of the bank, which subsequent attachment was good, and prior to his, as intervenor, he cannot be said to have had an interest in the property to be affected by any judgment that might be rendered in the case.

But upon another ground we think that the intervenor is precluded from ʃ obtaining relief. He does not, by his pleading, positively affirm the assignment of Boyce to Porter, because to do so would compel the court to decide that he could only claim under its provisions. The result of this would be that his attachment would fall. Nor does he repudiate the

assignment because he pleads no facts sufficient to make it void or fraudulent.  True, the plaintiff bank, to justify its second levy, alleges that the assignment was fraudulent and void, in that the claim of one John H. Curtis for $15,000 was not a just debt; but by replication the intervenor denies that the deed of assignment was fraudulent or void as to the plaintiff bank "by reason of any fraudulent provision therein concerning one John H. Curtis, or any other person." Thus the intervenor seeks to force the bank into accepting the provisions of an assignment which he, as a *bona fide* creditor, expressly declined to accept, yet positively refused to attack.  We think a reasonable construction of the complaint of the intervenor is, that by a failure on his part to assail the assignment, he has treated it, for the purposes of his intervention, as honest and fair, and, by such confession, under the rule laid down in the case of *Elling* v. *Kirkpatrick*, 6 Mont. 119, he stands in no position to demand an attachment against his debtor, or to intervene in the suit between the plaintiff bank and defendant Boyce.

The allegation of collusion, conspiracy, and fraud between the bank, Boyce, and the sheriff, is a conclusion not sustained by averments in the pleading.  The mere fact that the assignee was under the direction and in the employ of the bank is, by itself, not a fraud; nor is there any wrong charged against the sheriff, other than the several seizures and surrenders alleged to be void and irregular; nor are there any facts, other than the acts herein discussed, from which conspiracy or collusion can be legitimately inferred.  We think the court properly sustained the objection of the plaintiff bank to the testimony offered, and that the intervenor was justly denied relief.

After judgment, which was entered July 23, 1891, appellants, by motions made to the court, asked that all cost bills, and more particularly the cost bill filed July 21st by the sheriff, be stricken from the record, for the reason that no cost bill was filed by plaintiff bank, or by any other person, within the time provided by law.  A motion was also made to retax costs, on the ground that the plaintiff did not deliver to the clerk of the court, within two days after the decision of the court, or at any other time, any memorandum of its costs and necessary

disbursements, and to vacate and amend the judgment as to costs taxed against the intervenor upon the same grounds mentioned in the former motion relating to costs, and upon the further ground that the sheriff's fees were excessive. The motion to retax costs was sustained in part and overruled in part. The motions to strike the memorandum of costs from the records were denied, to which ruling exception was duly taken. Without further discussing the insufficiency of the pleading of the intervenor to gain a standing in the court, or of the form of his denial on information and belief of any greater indebtedness to plaintiff than $35,000, we fail to see how the intervenor can escape payment of costs which he directly caused to be incurred. The reduction in the amount claimed was voluntarily made by the bank, and proved to have been a payment after suit was commenced. In addition to this the intervenor admitted on the trial that Boyce & Co. justly owed plaintiff more than $62,000, and that the property attached was not worth more than $60,000; so that a reduction of $1,927.60, even if made by the instrumentality of the intervention, could not possibly be of advantage to the intervenor.

Appellants next contend that plaintiff was obliged to file a memorandum of its costs and sheriff fees as required by section 507 of the Code of Civil Procedure, which is as follows: "The party in whose favor judgment is rendered, and who claims his costs, shall deliver to the clerk of the court, within two days after the verdict or decision of the court, a memorandum of the items of his costs and necessary disbursements in the action or proceeding; which memorandum shall be verified by the oath of the party, or his attorney, stating that the items are correct and that the disbursements have been necessarily incurred in the action or proceeding."

Respondent argues that it was unnecessary to file the memorandum, under section 508 of the Code of Civil Procedure: "But such memorandum need not include the legal fees or costs of any officer of the court, or any witness fees when an affidavit of such witness' attendance is required by law to be made."

Construing these two statutes, it seems clear that the legal

fees and costs of any officer of the court need not be verified by the party or his attorney, and need not be included in any memorandum required to be filed by the prevailing party. (*Bank* v. *Neill*, 13 Mont. 377.) It is the intention of the statutes that officials of the court shall file and be responsible for their own legal fees and taxable costs; and unless such fees and costs are correctly charged, a penalty may be imposed. A litigant is relieved from including them in his sworn memorandum, and, unless he wishes to assume them as his own, and to incur the risk of vouching for their correctness, the better practice is to omit them. (*First Nat. Bank* v. *Neill*, 13 Mont. 377.)

The remaining point is whether a sheriff's expenditures, such as rent bills, keepers' fees, gas bills, water rents, fuel bills, and such other disbursements as are often necessarily made in levying attachment writs, are the officers' legal costs which need not be included in the party's verified memorandum, or are costs or disbursements which should be so included. The general practice of our courts has been for sheriffs to tax, as part of their costs, their disbursements in levying attachments upon personal property and safely keeping the same. It would be well nigh impossible oftentimes for an attaching creditor to keep informed of the expenditures of the sheriff, and to know whether his disbursements have been necessarily made. All these duties properly belong to the sheriff, and in their performance his necessary disbursements become legally taxable costs for which he is entitled to be reimbursed. This view is reasonable and based on a fair interpretation of the statute under consideration.

There may be various costs and necessary disbursements frequently incurred by parties in suits of which no record would appear, unless they were included in the verified memorandum required by section 507; and it is such costs which can be recovered by filing the sworn statement contemplated by the statute.

It is proper to note that sections 508 and 509 of the code are taken from the act of February 16, 1877, which was passed after the decision of the supreme court in the case of *Orr* v. *Haskell*, 2 Mont. 350.

The district court, in the case at bar, revised and reduced the sheriff's bills, and ordered a fee of $25 taxed against him for including items to which he was not entitled. This was in strict pursuance of the statutes, and well illustrates the application of the law holding the sheriff responsible for great care in his expenditures.

The judgment is affirmed.

*Affirmed.*

PEMBERTON, C. J., and DE WITT, J., concur.

