LETZ, APPELLANT, *v.* LETZ, RESPONDENT.
No. 8937.
Submitted January 31, 1950. Decided March 10, 1950.
215 Pac. (2d) 534.

Messrs. Hoffman and Cure, Great Falls, for appellant. Mr. H. B. Hoffman argued the cause orally.

Mr. Charles Davidson, Great Falls, for respondent. Mr. Davidson argued the cause orally.

MR. CHIEF JUSTICE ADAIR:

Appeal from certain orders made after judgment and in proceedings supplementary to execution.

In the fall of 1947 Jack M. Letz planted to winter wheat certain portions of the Mett Letz ranch in Cascade county, Montana, owned by his father Mett Letz. The son had theretofore contracted to purchase the ranch which was operated by the son and his father, each of whom was to receive one-half the crops to be harvested thereon.

The son and his wife lived on the ranch located near the town of Ulm until the late winter or early spring of 1948, when they removed to Great Falls where they have since resided with the wife's mother, Eva M. Merritt.

By August 4, 1948, the wheat crop had sufficiently ripened to be ready to harvest. On that date, a chattel mortgage executed by the son, as mortgagor, to his mother-in-law, Eva M. Merritt, as mortgagee, covering the ''mortgagor's undivided one-half interest in all crops'' planted or harvested during the year 1948 on certain described portions of the Mett Letz ranch, lying in sections 32 and 33, township 20 north, range 2 east, was filed in the office of the county clerk and recorder of Cascade county.

On the following day (August 5th), Mett Letz, the father, brought this suit against his son on a $6,000 promissory note made and given by the son July 23, 1946. A writ of attachment issued in the action and the son's share of the wheat crop from the southwest quarter of section 34, township 20 north, range 2 east, was attached, same being on land not included in nor covered by the crop mortgage given the mother-in-law.

On August 13, 1948, a second chattel mortgage executed by the son as mortgagor to his attorney, Charles Davidson, as mortgagee, was filed in the office of the county clerk and recorder, covering the son's undivided one-half interest in the crop harvested or then being harvested from the southeast quarter of section 34, being from land neither covered by the crop mortgage of August 4th nor by the attachment and levy of August 5th.

In his return on the writ the sheriff accounted for 4,598 bushels and 20 pounds of wheat as combined and threshed from the southwest quarter of section 34. This wheat was sold by agreement of the father and son for $8,123.44, and the sheriff retained in his possession the half thereof or $4,066.72 as the son's share of the proceeds of the crop from the southwest quarter of section 34.

The son contested the suit in which the attachment issued. After issue joined the action was tried to a jury commencing February 3, 1949. After hearing all the evidence of the parties

the jury, on February 7, 1949, returned its verdict for the father for the full amount demanded in his complaint.

On February 7, 1949, judgment for $7,233 and costs was entered for the father Mett Letz, plaintiff's duly verified memorandum of costs and disbursements was served and filed and a writ of execution issued and was delivered to the sheriff requiring that he make out of the judgment debtor's property the amount required to satisfy the judgment.

Immediately upon the return and filing of the verdict against him, the son set out for his father's ranch and removed therefrom a 1934 Standard power buck rake owned by him, taking the machine to the home of Claude Woods in Ulm, where he left it. On the same day (February 7th), he removed from the ranch a model 17 John Deere sixteen-foot combine owned by him. This machine he transported by truck to the outskirts of Great Falls where a viaduct across the highway near the Sun river bridge proved too low to permit the load to pass thereunder so the son left *his* combine at a nearby tourist camp and proceeded into Great Falls without it.

On the following morning, February 8, 1949, the son presented himself at the law offices of Johnson and Williams in Great Falls where he executed a bill of sale purporting to transfer to Johnson and Williams, as transferees, his title to the buck rake and combine. This instrument states that it is understood and agreed by and between all parties thereto that title to the personal property described therein shall pass ''as of the date of this Bill of Sale and *immediately* upon the delivery of this Bill of Sale.'' (Emphasis supplied.)

Immediately upon the execution of the unacknowledged bill of sale, Carter Williams, Esq., a member of the transferee partnership, took the document to the county courthouse and filed same in the office of the county clerk and recorder at 11:20 o'clock a. m., on February 8, 1949. See: R. C. M. 1947, sec. 73-105; Hart v. Barron, 122 Mont. 350, 204 Pac. (2d) 797; Epletveit v. Solberg, 119 Mont. 45, 55, 169 Pac. (2d) 722; Lee v. Laughery, 55

Mont. 238, 244, 175 Pac. 873; Baum v. Northern Pac. Ry. Co., 55 Mont. 219, 222, 175 Pac. 872.

Thereupon, the attorney, accompanied by the judgment debtor and his mother-in-law, Mrs. Eva M. Merritt, proceeded in an automobile to the tourist camp where the debtor had left *his* combine. They arrived at about 11:30 o'clock a. m., being approximately ten minutes after the filing of the bill of sale at the courthouse.

D. J. Leeper, the sheriff, and Robert Hunter, his deputy, armed with the writ of execution delivered to them the day before, were already at the combine when the attorney and his companions drove up. The attorney got out of the car and, walking over to the sheriff and his deputy, talked with them for about fifteen minutes, during which time the debtor and his mother-in-law sat in their car but at such a distance as to be unable to hear the conversation between the attorney and the officers.

The parley with the attorney concluded, Sheriff Leeper walked to the car wherein the debtor and his mother-in-law were sitting and there delivered to the debtor a copy of the writ of execution and a copy of the sheriff's notice of seizure and levy, informing the debtor that he (the sheriff) and his deputy had levied upon the combine and that "they had taken it into their possession."

Thereupon the attorney, the debtor and Mrs. Merritt proceeded by automobile to Ulm, some ten miles distant. Claude Woods was not then at home but the debtor pointed out his buck rake in the yard of the Woods place and the parties then returned to Great Falls without disturbing or moving the buck rake.

At about 1:30 o'clock that afternoon (February 8th) the attorney dictated to his stenographer certain notes or memoranda "just in case there was any question that came up about this bill of sale" she would be in a position to verify it.

In his return on the writ of execution the sheriff certified that he received the writ on the 7th day of February, 1949, and personally served it "on the 8th day of February, 1949, upon Jack M. Letz the defendant named therein, by delivering a copy of

the said Execution Writ together with a copy of the Sheriff's Notice to him personally in the county of Cascade and levying upon the following described personal property, to-wit: * * * One No. 17 John Deere combine; One Power Rake; * * * Cash in the amount of $4.066.72.''

On February 11, 1949, the judgment debtor served and filed a motion to have the trial court tax the costs in the action.

On February 15, 1949, being a week after the sheriff made his levy, Johnson and Williams made and delivered to Eva M. Merritt a bill of sale purporting to transfer to her the title, if any, which they have to the combine and power buck rake reciting therein that it is ''agreed by all parties hereto that title to the above described personal property passed to Eva Merritt by a sale on the 8th day of February, 1949, when said property was sold to her by Jack M. Letz and Helen Letz, and that this Bill of Sale is executed and delivered to release the interest of Johnson and Williams, if any, to said property.''

Also on February 15, 1949, Mrs. Merritt signed a notice of third party claim and subscribed and swore to an affidavit before Carter Williams, as a notary, therein laying claim to the $4,066.72 in cash, the combine and the buck rake, and attorney Williams filed such notice and affidavit with the sheriff on behalf of the third party claimant.

Following such filing, Mett Letz, the judgment creditor, gave the sheriff a good and sufficient bond in the sum of $10,000 to indemnify him against loss or damage by reason of retaining the property. R. C. M. 1947, secs. 93-4320 and 93-5812.

On March 4, 1949, an order issued, on application of plaintiff's counsel, which was served upon the third party claimant and the judgment debtor, requiring that they appear on a day certain to answer concerning any property of the judgment debtor in the possession of either of them, which order was personally served upon each.

On March 10, 1949, the judgment creditor served and filed a motion for an order allowing $1,205.85 as the costs of combining the standing crop of grain so taken under the attachment.

Thereafter the district court sitting without a jury heard: Defendant's motion to tax the costs; plaintiff's motion for an order to allow as costs the full amount paid and expended by the sheriff for the combining and threshing of the attached grain, and, in proceedings supplementary to execution, the issue of the third party claimant's asserted ownership of personal property levied upon under the writ of execution as property of the judgment debtor.

*Taxing costs.* Following the hearing the district court ordered that plaintiff's memorandum of costs and disbursements be "amended by changing the Sheriff's costs and fees * * * from $1,205.85 to $608.63 and that the total costs listed * * * be changed and amended from $1,241.75 to $644.53," and that the costs in favor of plaintiff be taxed at $644.53. Plaintiff here assigns the making of the above order as his first specification of error.

When the writ of attachment was delivered to the sheriff for service and levy he was handed a written praecipe directing him to attach one-half of the wheat crop from the southwest quarter of section 34, township 20 north, range 2 east. The sheriff proceeded to the Mett Letz ranch where he found the defendant Jack M. Letz and one Everett Isaacs whom the defendant had theretofore hired to harvest and combine the crop. The latter was then engaged in harvesting and threshing the wheat with a combine.

The sheriff served the writ by delivering a copy thereof to the defendant personally and a like copy to Isaacs, levying upon and attaching defendant's undivided one-half interest of all the crop harvested or to be harvested upon the southwest quarter of said section 34. At that time the sheriff arranged with Isaacs to continue with the harvesting and combining of the attached crop for the same compensation and on the same terms and conditions that he had theretofore been hired by defendant. The sheriff also instructed Isaacs that he was to turn over to the sheriff only the wheat in the southwest quarter of section 34. Isaacs then accompanied the sheriff to the elevator where the

wheat was to be delivered where the manager of the elevator informed them that there was a mortgage on some of the wheat on the Mett Letz ranch, doubtless referring to the crop mortgage to Eva Merritt filed the day before, but which covered only wheat to be harvested from sections 32 and 33.

On August 5, 1948, the sheriff made return on the writ certifying that he had that day received the writ "and personally served the same by delivering a copy thereof to Everett Isaacs and Jack M. Letz * * * and levying upon and attaching * * * an undivided one-half (½) interest of all wheat and other grain harvested or to be harvested, in 1948" upon the southwest quarter of section 34 of the Mett Letz ranch, "being the property of the above named defendant" and listing as costs, "Service—$2.00."

The crop grown on the southwest quarter of section 34 was harvested and combined by Isaacs under the direction of the sheriff. After being delivered to the elevator the plaintiff and defendant mutually agreed that the wheat be sold and converted into cash by the sheriff and this was done.

Thereafter the sheriff made and attached to the writ a supplemental return as follows:

"Sheriff's Office, County of Cascade, State of Montana.

"* * * Supplementary Return on Writ of Attachment.

"I hereby certify that this is an accounting of the bushels of wheat and money received for said wheat as described in the preceding return.

| | | |
|---|---|---|
| 2,023 bushels 10 lbs. at $1.77 per bu. | | $3,580.96 |
| 276 Bushels at $1.76 per bu. | | $ 485.76 |
| Total 2,299 bushels 10 lbs. | Total | $4,066.72 |

"I now have in my possession the $4.066.72 received for said wheat which was sold on the daily grain market at the request of the defendant.

"All done in the said County of Cascade.

"Dated this 8th day of September, 1948.

"D. J. Leeper, Sheriff,

"By Homer Bain, Jr., Under-Sheriff.

502

Combining Costs paid to Evart Isaac .............................$1,194.45
Mileage ................................................................................. 8.40
Total ....................................................................................$1,202.85''

In this state annual crops such as wheat, oats and the like are
■ usually regarded and treated as chattels personal and sub-
ject to sale or mortgage and levy of attachment or execution as
other chattels even while still annexed to the soil. ⁰Power Mer-
cantile Co. v. Moore Merc. Co., 55 Mont. 401, 407, 177 Pac. 406;
Morton v. Union Cent. L. Ins. Co., 80 Mont. 593, 608, 261 Pac.
278. See also, Kelly v. Stockgrowers Credit Corp., 66 N. D. 209,
263 N. W. 717, 103 A. L. R. 460, and annotation at pp. 464-470.

Upon the levy of a writ of attachment the property attached is
■ in the custody of the law, held to meet and pay any judg-
ment which the attaching creditor may recover and possession
of the attached property vests in the officer until the property is
disposed of. Keith v. Ramage et al., 66 Mont. 578, 590, 591, 214
Pac. 326.

''It is generally held that the undivided interest of a cotenant
■ in personal property may be attached; and to effect this
the attaching officer may take possession of the entire property,
though he can only sell on execution such undivided interest.''
3 Bancroft's Code Practice & Remedies, sec. 2285, p. 3045. See
also, 4 Am. Jur., Attachment & Garnishment, sec. 178, p. 664,
and secs. 559, 560, pp. 894, 895; 7 C. J. S., Attachment, sec. 74,
p. 248.

As it is the duty of an officer, under a writ of attachment to
■ take and retain possession of the property on which he has
levied at his peril, he is entitled to reimbursement of actual
necessary and reasonable expenses incurred by him in the per-
formance of his duty. 7 C. J. S., Attachment, sec. 293, note 39, p.
476; R. C. M. 1947, sec. 25-226, subd. (2) ; First Nat'l Bank of
Butte v. Boyce, 15 Mont. 162, 175, 38 Pac. 829.

Where the sheriff appoints a custodian to keep and care for
■ the attached property, he is liable to such custodian under
his express contract or for a reasonable compensation. 7 C. J. S.,
Attachment, sec. 293, note 65, p. 478.

In case the sheriff has paid the expense of keeping and caring for the attached property and judgment in the action goes against the defendant, the officer is entitled to deduct such expenses from the proceeds of the attached property before turning them over to the attaching creditor in satisfaction of his debt. It therefore follows that the cost of such care and custody falls ultimately on the judgment debtor. 7 C. J. S., Attachment, sec. 293, note 49, p. 477.

The prevailing party is *prima facie*, entitled to costs. R. C. M. 1947, sec. 93-8602; Sullivan v. Mountain, 117 Mont. 224, 231, 160 Pac. (2d) 477.

On the day the judgment in favor of the plaintiff was rendered and entered he served and filed his memorandum of the items of his costs and necessary disbursements in the action duly verified by the oath of his attorney of record as provided in R. C. M. 1947, sec. 93-8619. Such memorandum, omitting the title of the court and cause and the affidavit of counsel, reads:

"Disbursements

| | | | | |
|---|---|---|---|---|
| Sheriff's Fees | | | $............ | |
| Clerk's Fees, | Complaint | $ 5.00 | | |
| | Judgment | 2.50 | 7.50 | |
| Witness' Fees, | Nick Letz | 3 days | | |
| | Eda Letz | 3 days | | |
| | John Mateha | 3 days | | |
| | Mileage | 20 miles | 7.40 | |
| Stenographer fee | | | 3.00 | |
| Sheriff's Fees: | Service | $ 3.00 | | |
| | Mileage | 8.40 | | |
| | Combining costs on attachment of growing grain | 1,194.45 | | |
| | | | $1,205.85 | 1,205.85 |
| | Total | | $1,241.75" | |

The verified memorandum of costs was *prima facie* evidence

of the correctness of the items of disbursements. Hoskins v. Northern Pac. Ry. Co., 39 Mont. 394, 405, 102 Pac. 988.

That the sheriff actually paid the sum stated in his return and in the plaintiff's memorandum of costs for combining the grain is undisputed nor is the reasonableness of the sum for the work performed denied.

Long ago in King v. Allen, 29 Mont. 5, 73 Pac. 1107, 1108, this court stated the rule that has since been followed in this jurisdiction, namely, that the "memorandum is *prima facie* evidence that the items were necessarily expended, and are properly taxable, unless, as a matter of law, they appear otherwise upon the face. The burden of overcoming this *prima facie* case rests upon the adverse party, and the party filing the memorandum is required to furnish further proof only in rebuttal. Hence upon the trial of a motion to tax costs, if the adverse party does not overturn the *prima facie* case made by the verified memorandum, the objection should be overruled."

In Hibbard v. Tomlinson, 2 Mont. 220, 222, the court said: "There is nothing in a motion to re-tax costs that requires that it should be entertained without some showing to support it. A motion to re-tax costs should always be supported, either by the records in the case, or by affidavits showing the illegal charges, or by a statement presenting them. Something must be presented to the court that will show that some charges have been improperly allowed as costs."

Here the duty devolved upon the defendant to show that the items in the memorandum were not properly taxable. This he did not do. Having wholly failed to overcome the *prima facie* evidence established by the timely service and filing of the memorandum, defendant's motion to tax should have been denied. Brande v. Babcock Hardware Co., 35 Mont. 256, 264, 88 Pac. 949, 119 Am. St. Rep. 858.

*Third Party Claim.* In her notice of third party claim directed and served upon the sheriff, Eva Merritt gave notice that the "described property, which was executed on by that Writ of

Execution issued * * * on the 7th day of February, 1949'' consisting of $4,066.72 in cash, the combine and the buck rake ''is owned by me.''

In her affidavit accompanying the above notice Eva Merritt swore:

''That her claim and ownership to the above described sum of money is by virtue of the Chattel Mortgage on certain wheat, which mortgage was dated January 11, 1948 and signed by Jack Letz and filed August 4, 1948 * * *

''That affiant's claim, and ownership of the above described combine and buck rake is based upon a sale to affiant by Jack Letz and Helen Letz of said property to affiant on the 8th day of February, 1949 at about 10:15 A. M. of that day.''

Thus did the third party claimant assert title in herself through an alleged sale and claim an interest in the property adverse to the judgment debtor. See R. C. M. 1947, sec. 74-101; Apple v. Henry, 66 Mont. 244, 248, 213 Pac. 444; Ide v. Leiser, 10 Mont. 5, 13, 24 Pac. 695, 24 Am. St. Rep. 17.

Contested claims as to title to property which the judgment creditor seeks to subject to his execution can not be litigated in proceedings supplementary to execution, the court being powerless to grant any relief therein other than that authorized by R. C. M. 1947, sec. 93-5907. Johnson v. Lundeen, 61 Mont. 145, 148, 200 Pac. 451; Missoula Trust & Savings Bank v. Northwestern Abstract & Title Ins. Co., 61 Mont. 370, 372, 203 Pac. 854; Bowlin Liquor Co. v. Fauver, 43 Mont. 472, 486, 117 Pac. 103; Brindjonc v. Brindjonc, 96 Mont. 481, 488, 31 Pac. (2d) 725. Compare: Blake v. Blake, 86 Cal. App. 377, 260 Pac. 937; Bond v. Bulgheroni, 215 Cal. 7, 8 Pac. (2d) 130; Cann v. George B. Williams Land & Livestock Co., 56 Nev. 242, 48 Pac. (2d) 887; Booge v. First Trust & Savings Bank, 1941, 46 Cal. App. (2d) Supp. 879, 116 Pac. (2d) 503; Wulfjen v. Dolton, 24 Cal. (2d) 878, 151 Pac. (2d) 840.

In Bond v. Bulgheroni, supra, the court said [215 Cal. 7, 8 Pac. (2d) 132]: ''Proceedings supplementary to execution are wholly inadequate where the grantee or transferee of a

judgment debtor asserts title in himself, for the reason that to make an order directing the application of property claimed by a person in his own right would be to deprive him of his property upon a summary proceeding, and without due process of law. Blake v. Blake, supra [86 Cal. App. 377, 260 Pac. 937]. Where a judgment creditor claims that title under a conveyance or transfer is invalid, an issue as to such ownership and title should be properly made and tried in an appropriate action in which a judgment may be had and the parties conclusively bound. Lewis v. Chamberlain, 108 Cal. 525, 527, 41 Pac. 413. * * * Proceedings supplementary to execution are not an adequate remedy whenever they cannot, in themselves, without the aid of an independent action, result in subjecting the property to the payment of plaintiff's claim.''

Here in proceedings supplementary to execution the district court assumed to try and determine the contested claims to property, the ownership of which is in dispute,—to make findings of fact and conclusions of law respecting same, and by ''order'' determine that Eva M. Merritt, the third party claimant ''is the owner of the buck rake and combine harvester.'' From such order plaintiff has appealed, assigning as his second and fourth specifications of error the trial court's findings, conclusions and order purporting to adjudge that the third party claimant is the owner and entitled to the possession of the machinery.

The proceedings failed to disclose assets indisputably belonging to the judgment debtor. The examination revealed only contested claims made to property the title of which is in dispute so that the trial court was and is powerless to make the findings of fact, conclusions of law and order entered. Wilson v. Harris, 21 Mont. 374, 409, 54 Pac. 46.

The reason is that to make an order directing the application of property claimed by a person in his own right, if it could have any effect whatever, would be to deprive him of his property upon a summary proceeding and without due process of law. Should the judgment creditor consider the third party

claimant's claim of title feigned, fraudulent, or otherwise invalid or void, the issue of the claimant's asserted ownership should be presented and tried in an appropriate action in which a verdict or findings and *judgment* may be properly made and entered.

Accordingly the findings of fact and conclusions of law are vacated and set aside,—each order is reversed, and, as to the proceedings supplementary to execution, the cause is remanded to the district court for such further proceedings or orders as are authorized by the provisions of R. C. M. 1947, sec. 93-5907, and this opinion, each party to bear his own costs on the appeal. It is so ordered.

ASSOCIATE JUSTICES ANGSTMAN, FREEBOURN, METCALF and BOTTOMLY, concur.