No. 23,295.

THE STATE OF KANSAS, *Appellant,* v. F. H. SMITHMEYER et al., *Appellees.*

### SYLLABUS BY THE COURT.

1. PROCEEDING—*To Compel Return of Documents Produced in Response to Subpœna Duces Tecum.* In a proceeding against the attorney-general to compel him to return documents alleged to have been wrongfully taken by him from the owners thereof, procedural irregularities will be disregarded.

2. SAME—*Documents Not Obtained by "Search and Seizure."* Documents produced by witnesses in response to a subpœna *duces tecum* issued by the attorney-general under section 1 of chapter 316 of the Laws of 1919 are not obtained by search and seizure in violation of section 15 of the bill of rights of the constitution of the state of Kansas.

3. SAME—*Documents Should Be Returned to Witnesses Producing Them.* Where documents are produced by witnesses under a subpœna *duces tecum* issued by the attorney-general under section 1 of chapter 316 of the Laws of 1919, the documents should be returned to the witnesses producing them when the attorney-general has concluded his examination of the witnesses.

4. SAME—*Documents Not "Instruments" Used in Violation of Antimonopoly Laws.* Books, documents, and letters are not instruments used in violation of the antimonopoly laws of this state; but, even if it can be said that they are such instruments, they must be returned to the persons who produced them under a subpœna *duces tecum* issued under section 1 of chapter 316 of the Laws of 1919.

Appeal from Douglas district court; CHARLES A. SMART, judge. Opinion filed December 10, 1921. Affirmed.

*Richard J. Hopkins,* attorney-general, *John G. Egan,* assistant attorney-general, and *A. B. Mitchell,* county attorney, for the appellant.

*Thomas F. Doran, John S. Dean, Harry W. Colmery,* all of Topeka, and *S. D. Bishop,* of Lawrence, for the appellees.

The opinion of the court was delivered by

MARSHALL, J.: On May 11, 1920, the attorney-general, with two assistants and a stenographer, went to the place of business of the Theo. Poehler Mercantile Company, a corporation, in Lawrence, and there requested of George Kirchhoff, the secretary and treasurer of the company, the names of the employees who had charge of the files of the company, and from Mr. Kirchhoff obtained the names of A. M. Hughes and Marjorie Thayer. The attorney-general, acting under section 1 of chapter 316 of the Laws of 1919, immediately served on A. M. Hughes and Marjorie Thayer a subpœna *duces tecum* directing them to appear before the attorney-general to testify and to bring with them certain documents from the offices of the Theo. Poehler Mercantile Company. A representative of the attorney-general assisted the witnesses in gathering the documents wanted. A. M. Hughes and Marjorie Thayer appeared with the

documents and were examined. Another witness was subpœnaed and appeared. She was directed by the attorney-general to return to the offices of the Theo. Poehler Mercantile Company and bring certain stenographers' notebooks. That she did. The attorney-general examined the witnesses, concluded his inquisition, and retained possession of the books and documents that had been produced. An information, charging F. H. Smithmeyer, the president of the Theo. Poehler Mercantile Company, and George Kirchhoff, with violating the antimonopoly laws of this state, was sworn to by the county attorney of Douglas county on May 13, 1920, and was filed in the district court of that county on the same day. On July 9, 1920, the attorney-general filed in the supreme court a proceeding in quo warranto against the Anthony Wholesale Grocery Company and others, including the Theo. Poehler Mercantile Company. On May 15, 1920, an information against A. H. Gufler was filed in the district court of Lyon county, charging him with violating the antimonopoly laws of this state. On November 22, 1920, F. H. Smithmeyer, George Kirchhoff, and the Theo. Poehler Mercantile Company filed an application in the action commenced against Smithmeyer and Kirchhoff in Douglas county, asking that the papers retained by the attorney-general at the inquisition held by him on May 11 be returned to Smithmeyer, Kirchhoff, and the Theo. Poehler Mercantile Company, and that the court issue an order enjoining the use of all papers retained by the attorney-general in that action or in any similar action in any court in the state. On that application, on December 1, 1920, the court ordered the attorney-general "to forthwith return to the Theo. Poehler Mercantile Company all books, letters, telegrams, documents, and papers taken by him from the possession of the Theo. Poehler Mercantile Company at Lawrence, Kan., on the 11th day of May, 1920." The attorney-general did not return any of the books, documents, or letters that had been retained by him at the inquisition. On December 24, 1920, Smithmeyer, Kirchhoff, and the Theo. Poehler Mercantile Company filed a verified pleading alleging that the attorney-general had failed to return the books, letters, telegrams, documents, and papers and asking that he be required to show cause why he should not be adjudged guilty of contempt of court. Citation was served on the attorney-general on December 27, 1920, and on December 28, 1920, the state appealed from the order directing him to return the books, letters, telegrams, documents, and papers.

1. It is urged that the proceeding instituted by F. H. Smithmeyer, George Kirchhoff, and the Theo. Poehler Mercantile Company was irregular and that the mercantile company had no right to intervene. Outside the intoxicating liquor statutes, the court knows of no law giving to third parties the right to intervene in a criminal action, except possibly where the rights of such parties are directly affected by an order made in the action. Smithmeyer and his associates instituted this proceeding to recover possession of the books, documents, and letters in the hands of the attorney-general. He responded and resisted. The proceeding cannot be treated as a part of the criminal action but may be considered as one against the attorney-general, similar at least to an action in mandamus. If the proceeding is treated as one against the attorney-general, an appeal on his part would have been the proper method to test the validity of the order made directing him to turn over to the Theo. Poehler Mercantile Company the books, letters, telegrams, documents, and papers in his possession. The attorney-general did not appeal; the state appealed. These are questions of procedure, and they should not be permitted to defeat justice. The trial court in some regular form of action, as one in mandamus, would have jurisdiction of the matter, and this court will disregard the procedural irregularities and dispose of the controversy.

2. The defendants urge that the proceedings by which the attorney-general obtained possession of the books and documents amounted to a search and seizure in violation of section 15 of the bill of rights of the constitution of the state of Kansas, which reads:

"The right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate; and no warrant shall issue but on probable cause, supported by oath and affirmation, particularly describing the place to be searched and the persons or property to be seized."

The proceeding instituted by the attorney-general was not a search and seizure. He issued his subpœna directing certain witnesses to appear before him with certain documents. Those witnesses appeared before the attorney-general in obedience to those subpœnas and brought the documents that are now the subject of this controversy. The inquisition held by the attorney-general was authorized by section 1 of chapter 316 of the Laws of 1919. That statute authorized him to issue subpœnas *duces tecum* for any witness who could produce the documents desired, whether that witness was an officer or an employee of the mercantile company. It was

The State v. Smithmeyer.

wholly immaterial who produced the documents desired, so long as they were produced in obedience to a subpœna issued by the attorney-general. This contention of Smithmeyer and his associates cannot be sustained.

3. Another proposition remains to be disposed of. While the production of the documents in obedience to a subpœna *duces tecum* did not violate section 15 of the bill of rights of the constitution of this state, the retention of those documents by the attorney-general after the witnesses had been examined and discharged is an altogether different question.

The attorney-general contends that he should be permitted to retain possession of these documents for the purpose of introducing them in evidence in this action, in the action in quo warranto against the Anthony Wholesale Grocery Company and others, and in the action against A. H. Gufler in Lyon county.

In *Carter v. Graves,* 12 N. C. 74, 75, the court said:

"It is to be observed that the deed was private property, and the defendant had no greater right to it after the trial, than he had before: the law interposed so far only as to give him a right to use it as evidence in the trial of the suit; and the law would not be true to itself, if, after the purpose was answered for which it dispossessed the plaintiff of the deed, it did not place her in *statu quo,* by re-delivering it to her."

The supreme court of New Jersey, in *Hilyard v. Township of Harrison,* 37 N. J. Law, 170, 174, used the following language:

"But the court, in exercising this control over papers and documents offered in evidence, will merely grant inspection and examination by the party and his witnesses, either in open court or before an officer of the court, or in the presence of the party producing them, or his attorney, and will not take them from the latter and deliver them into the possession of the other side."

In *Stow v. Betts,* 7 Wendell (N. Y.) 536, the following language is found:

"A party who, under a rule of court granted on the application of his adversary *seeking a discovery,* has deposited his books of account in the clerk's office, is entitled to withdraw the same, after the books have been deposited a reasonable time. N. B. The court will hereafter specify in their rule the time the books shall remain." (Syl.)

In *Matter of Randall,* 87 N. Y. App. Div. 245, the syllabus is as follows:

"A witness, subpœnaed to attend, in the State of New York, before a commissioner appointed by a foreign court to take testimony in an action pending therein and to produce before such commissioner the books of a corporation carrying on business in the city of New York, should not be required to deposit and leave such books with the commissioner."

The following language is found in *Ely v. Mowry,* 12 R. I. 570, 572:

"But when a document is produced for inspection under an order of the court, the court will not compel the impounding of it, or the depositing of it with an officer of the court or a third person. The owner is allowed to retain possession of it, the order merely permitting its inspection in his hands, or in the hands of his attorney, by the opposite party, or by witnesses."

An English case is *Beckford v. Wildman,* 16 Vesey, 438, 442, where the high court of chancery said:

"That sort of title-deed must therefore be produced for the purpose of being proved before the Examiner; if necessary for the discovery of its contents; and must be produced at the hearing; if necessary: but the Court does not take the custody of it in the interval without a special case."

In another English case, *Thomas v. Dunn,* 6 Manning & Granger, 274, 277, decided by the court of common pleas, Tindal, C. J., said:

"I am not aware of any case which would warrant our compelling the plaintiff to deposit the contract with the masters."

In 40 Cyc. 2170 this language is used:

"Books or papers produced in obedience to a subpœna duces tecum remain under the control of the person producing them, and he cannot be required to deposit and leave the same with a commissioner who is conducting the examination."

The rule appears to be clear and well settled that one who procures or compels the production of papers cannot take the custody of those papers from the person producing them. The statute under which the attorney-general was proceeding did not authorize him to retain possession of the documents after the examination of the witnesses had been completed. It necessarily follows that when the attorney-general was through with his examination of the witnesses he should have returned the books and documents to the witnesses who had produced them.

4. The attorney-general urges that the documents, books, and letters were instruments used in the violation of law and that therefore he had the right to retain them to be used in evidence, without regard to the manner in which he acquired them. In response to this, it must be said that while they might contain evidence of the violation of law, it cannot be said that they were instruments used in that violation. Even if they were such instruments, they could not be taken from the persons who had produced them in obedience to a subpœna *duces tecum.*

The order of the district court is affirmed.

BURCH, J., not sitting.