[Civ. No. 3619. Third Appellate District.—January 14, 1929.]

L. O. McKELLEY, Petitioner, v. B. J. TURNER, as Auditor, etc., Respondent.

Charles Kasch and M. H. Iverson for Petitioner.

H. B. Churchill for Respondent.

FINCH, P. J.—This is an original application for a writ of mandate requiring the respondent, as auditor of Lake County, to issue his warrant in favor of petitioner for his salary as sheriff of that county for the month of June, 1928. The only issue of fact raised by the pleadings is whether the petitioner resigned his office as such sheriff on May 17, 1928. A reference was ordered and the referee took evidence and found therefrom that the petitioner did not so resign. Respondent contends that the evidence does not support the finding of the referee.

It appears from the evidence that during the forenoon of May 17, 1928, the board of supervisors of the county made demand upon the petitioner that he resign the office. He refused to do so and engaged an attorney to represent him in the controversy. Later in the day the attorney went to the petitioner's home and, after much persuasion, induced him to sign a form of resignation which the attorney, of his own volition, had prepared in advance. The attorney thereupon proceeded to the courthouse and filed the paper so signed. Petitioner contends that it was filed without his consent and contrary to his express direction. Relative to what occurred at the time he signed the paper, the petitioner testified: "I said, 'I am sick but I will sign it. . . . Don't turn it over until tomorrow,' and he went. I said this, repeating it again, 'Don't turn it over until tomorrow,' and I got to the door just a few minutes after, . . . and I called to Mr. Spurr, he was in the yard, I said, 'Mr. Spurr, hurry down and tell Howard (the attorney) not to put my resignation in this evening because I don't want it to go in until tomorrow and see how I feel.' . . . I said, 'Mr. Spurr, tell Howard not to put it in, I told him not to put it in until tomorrow. I am afraid he will, he seemed to be in an awful hurry. I can't go any further than this door, rush down and tell him for goodness sake not to put it in today.' " The attorney testified that, within a few minutes after the written resignation was signed and delivered to him, Mr. Spurr, who is his uncle and an old friend of petitioner and who had accompanied the attorney to petitioner's residence for the purpose of inducing him to resign, met him at the courthouse and said: "I just came from Lon's (petitioner's) house, and Lon . . . told me to tell you, or ask you not to present the resignation until in the

morning''; that the witness and Mr. Spurr then ''talked the matter over and concluded the best thing to do was to present it now, and we both went in the board of supervisors' room . . . and we were both there when it was presented''; that at the time the resignation was handed to him by petitioner, the latter said: ''I wish you wouldn't present the resignation until in the morning.'' The attorney further testified: ''That was the conversation had before the resignation was signed. . . . After I got the resignation Mr. McKelley, as I remember it, best of my recollection, he never instructed me or said anything about presenting the resignation until I got the message from uncle Al in the hall. . . . After thinking it over, I don't believe, to the best of my recollection, there was anything said about presenting the resignation; what was said was with reference to the signing of the resignation. . . . That conversation was never talked over with anyone by me and it is hazy in my mind.'' In view of the uncertainty of this witness the referee could not well have found against petitioner's contention that he instructed his attorney not to file the resignation on the day it was signed.

After the attorney had filed the resignation in violation of such oral instruction, the petitioner, on the same day, May 17, 1928, caused to be delivered to the attorney a written communication, in which he stated: ''I now withdraw and cancel such resignation and request and instruct you to deliver same forthwith to F. R. Minkler, the bearer of this letter.''

The writing signed by the petitioner could have become effective as a resignation only upon its delivery to the clerk of the board of supervisors. (Pol. Code, sec. 995, subd. 4; *Meeker* v. *Reed*, 70 Cal. App. 119, 123 [232 Pac. 760]; *People* v. *Marsh*, 30 Cal. App. 424, 427 [159 Pac. 191].) The mere manual transmission of the writing to the clerk, without authority and contrary to the express direction of the petitioner, was of no effect. The authority of an agent, not coupled with an interest, to do a particular thing can be terminated by the principal at any time before the authorized act is performed. (*McCorray* v. *Stockton Sav. & Loan Soc.*, 131 Cal. 321 [63 Pac. 479].) In this case the attorney was not authorized to file the petitioner's resignation until

May 18th, and, prior to that time, his authority to file it was terminated.

The findings of the referee are amply supported by the evidence and the petitioner is entitled to a peremptory writ of mandate as prayed for in his petition.

 May 31, 1928, the board of supervisors adopted a motion purporting to appoint John H. Brinkerhoff sheriff of the county. Brinkerhoff took the oath of office June 9, 1928, and thereafter both he and the petitioner have assumed to act as sheriff of the county. The respondent has refused to issue warrants to either of such claimants for salary as sheriff. This was the proper course for the respondent to pursue and it is hereby found and determined that the respondent appeared and made defense in this proceeding in good faith.

Respondent's motion to set aside the findings of the referee is denied.

It is ordered and adjudged that a peremptory writ of mandate issue out of this court as prayed for in the petition and that the petitioner recover his costs incurred in this proceeding, to be paid by the county of Lake, as provided by section 1095 of the Code of Civil Procedure.

Plummer, J., and Hart, J., concurred.