[Civ. No. 20183. First Dist., Div. Two. June 18, 1962.]

FEDERAL AUTOMOTIVE SERVICES, Plaintiff and Respondent, v. LANE BUICK COMPANY, Defendant and Appellant.

William H. McPherson for Defendant and Appellant.

Jackson E. Nichols for Plaintiff and Respondent.

AGEE, J.— Defendant appeals from an order granting a preliminary injunction which enjoins defendant from interfering with plaintiff's customers or prospective customers by making representations, through its agents or employees, that plaintiff is insolvent and cannot furnish goods and services contracted for and from persuading and inducing plaintiff's customers to breach and cancel their contracts with plaintiff by making false and malicious representations for the purpose of injuring competitors and destroying competition.

The evidence in the light most favorable to respondent is sufficient to support the order under the common-law rule as followed in California, and the injunctive relief granted is proper in the situation thus presented. (*Imperial Ice Co.* v. *Rossier*, 18 Cal.2d 33 [112 P.2d 631]; *California G. C. Board* v. *California P. Corp.*, 4 Cal.App.2d 242 [40 P.2d 846]; *Remillard-Dandini Co.* v. *Dandini*, 46 Cal.App.2d 678 [116 P.2d 641]; see also, 2 Witkin, Summary of California Law, p. 1331, "Inducing Breach of Contract.")

Respondent conducts a world-wide sales and service organization which makes contracts with servicemen about to return home from foreign duty for sale and delivery of automobiles to them upon their arrival in the United States. Many of these customers arrive by air at Travis Air Force Base in Solano County, California. Appellant is an automobile distributor located at Fairfield, which is near the base. Sergeant George C. Thompson is the noncommissioned officer in charge of processing inbound personnel. He is expressly included in the injunction.

Respondent's verified complaint and the affidavit of its president allege in substance that appellant, acting through Thompson and other agents, was and had been engaged in tortious interference with its contractual relations by falsely representing to numerous of respondent's customers that respondent was unreliable, insolvent and unable to perform its contracts for delivery of automobiles, thereby inducing such customers to breach their contracts or to refrain from doing business with respondent and thereupon to purchase automobiles from appellant upon the further representation by appellant that it would secure a refund of any down payment which had been made to respondent under said contracts. Count one of the complaint describes a specific instance wherein one Horace Holmes was in this manner induced to repudiate a contract with respondent for the sale and delivery

of an automobile to him and to enter into a new contract with appellant for the purchase of an automobile from it. Count two of the complaint alleges that appellant was making false representations as described above to the public at large, including respondent's customers and prospective customers. Count three of the complaint seeks to have appellant enjoined from the foregoing conduct. Count four of the complaint alleges that appellant's conduct violates the provisions of the California Unfair Trade Practices Act and section 17500 of the Business and Professions Code. The prayer asks for injunctive relief.

Appellant filed an affidavit denying the making of any of the foregoing representations and alleging that Thompson's only connection with appellant was that he was occasionally employed by it to drive automobiles from Fairfield to points of delivery in California.

Respondent called its president, Robert J. Halcro, and one Sergeant Joseph Wells as witnesses at the hearing on the application for the preliminary injunction. Appellant's counsel called Thompson as his only witness.

Wells testified that he and respondent had entered into a contract in Guam whereby Wells traded in his automobile as a credit on the purchase of a new automobile to be delivered to him by respondent upon his arrival in this country; that he arrived at Travis Air Force Base from Guam on December 21, 1960; that as he was being processed in, Thompson asked him how he intended to get home; that he related the transaction with respondent; that Thompson stated that he believed that respondent had gone out of business but that he had a friend at appellant's who could confirm this; that Thompson placed a telephone call and put Wells on the line; that someone on the other end said he was with the appellant company, that the respondent had gone out of business, but that he would see what he could do about getting back the credit Wells had received for his trade-in; that a Sergeant Tipton, who was a fellow passenger on the plane which had flown Wells in, thereupon telephoned respondent and ascertained that it was not out of business; that respondent immediately sent a representative to the base who drove Wells to Oakland, where he received delivery of a new automobile in accordance with his contract.

Halcro testified that his organization had experienced approximately one hundred breaches of such contracts at Travis

Air Force Base in the two years previously; that this problem was not encountered at any of the other ports of entry where it did business; that it was caused by a concerted effort by appellant "to shortstop customers through various ways when they arrive at Travis"; that he had observed Thompson's conduct with relation to this activity and had complained to the military authorities about it.

Thompson testified that he was not employed by the appellant company on December 21, 1960, in any capacity; that he had worked for the company as a driver but never as a salesman; that when Sergeant Wells and Sergeant Tipton told him that they had contracts to obtain automobiles through respondent company, he replied: " 'Are you sure that they are still in business? It is my belief that they are no longer in business.' . . . 'I have heard that from several sources.' . . . 'In this case I will make a phone call to find out if they are still in business, and if they are not, I would suggest if you are going to buy a car, you could buy it right in this particular area here.' " Thompson admitted that he then made the phone call but stated that "I don't recall whether it was Lane [appellant] or whether it was Showalter or one of these other dealers that I know personally."

As we have stated, the evidence is sufficient to support the order granting the preliminary injunction. ▮ However, the order did not provide for a bond as required by section 529 of the Code of Civil Procedure. This section was enacted in 1872. The Business and Professions Code was enacted in 1937 (Stats. 1937, ch. 399). ▮ It must be presumed that the Business and Profesisons Code was enacted with the provisions of the Code of Civil Procedure in mind. ▮ "The Business and Professions Code and the Code of Civil Procedure are to be read and construed together under the 'well-recognized rule that for purposes of statutory construction the codes are to be regarded as blending into each other and constituting but a single statute.' [Citations.]" (*Pesce* v. *Department of Alcoholic Beverage Control,* 51 Cal.2d 310, 312 [333 P.2d 15].)

▮ Respondent asserts that the failure to require a bond is justified under section 17081 of the Business and Professions Code, which provides: "It is not necessary for the plaintiff, in any action under this *chapter,* to provide or file any undertaking or bond for the issuance of any interim or final injunction" (emphasis added). This section is in di-

vision 7, part 2, chapter 4, of said code, which chapter contains sections 17000 to 17101, inclusive.

It is respondent's contention that the injunction may be supported by the provisions of sections 17045 and 17047 of said chapter 4. Section 17045 provides: "The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful." Section 17047 makes it unlawful to solicit any violation of said chapter.

Section 17045 is not applicable herein. It comprehends one aspect of price discrimination and there is no evidence in the instant case to indicate that price discrimination or the extending of special services not extended to all purchasers was practiced by appellant. The evidence is that the same offer was made to any person who had made a contract with respondent, the offer being to attempt to obtain a refund from respondent company of any down payment or trade-in allowance and then sell that person an automobile through appellant company.

Respondent also urges that the injunction may be based upon section 17500 of the Business and Professions Code. It is unnecessary to decide this for the reason that that section is part of chapter 1 of part 3 of division 7 of said code, and is therefore not affected by section 17081, which, as we have seen, applies only to actions under chapter 4 of part 2 of division 7 of said code.

In order to say that section 17081 applies to section 17500, we would be forced to say that, when the Legislature provided for the omission of a bond "in any action under this *chapter*," it intended to mean "in any action under this *division*." The chapter in which section 17081 is included is titled "Unfair Trade Practices," while the chapter in which 17500 is included is titled "Advertising." If the Legislature intended to extend the bond waiver provision to any action brought under the chapter titled "Advertising," it would have been a simple matter to do so. That it did not have such an intention is further evidenced by the provisions of section 17535, which, although providing that any violation of *"this chapter"*

(which includes 17500) may be enjoined, does not make any provision for the waiver of a bond (emphasis ours).

We hold that the injunction issued herein is inoperative and of no effect because the order granting the same did not require the undertaking as required by section 529 of the Code of Civil Procedure. (*Griffin* v. *Lima*, 124 Cal. App.2d 697, 699-700 [269 P.2d 191].) This does not preclude respondent from making application in the same action for another preliminary injunction. (*McDonald* v. *Superior Court*, 18 Cal.App.2d 652 [64 P.2d 738].)

The order is reversed and the cause remanded, with leave to respondent to renew the application. (*McCracken* v. *Harris*, 54 Cal. 81.)

Kaufman, P. J., and Shoemaker, J., concurred.