[Civ. No. 28501. Second Dist., Div. Two. Sept. 15, 1964.]

CHESTER M. OKSNER et al., Petitioners, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; JOHN R. THERIOT, Real Party in Interest.

Grant B. Cooper, Richard M. Moore and Fitzpatrick & Wiley for Petitioners.

No appearance for Respondent.

Robert A. Neeb, Jr., Brinton N. Bowles, Von Herzen & Hutton, Von Herzen & Laidig and Peter F. Burum for Real Party in Interest.

ASHBURN, J.*—Now before us are writ of review testing the validity of an order adjudging petitioner Oksner guilty of contempt of court and an alternative writ of mandate commanding the superior court to vacate certain orders made on June 11, 1964, and June 26, 1964, directing petitioner Atlantic Savings and Loan Association (hereinafter called Atlantic) and petitioner Oksner to surrender to the clerk of the court a certain valuable note and deed of trust held by Atlantic as pledgee, and also directing the lower court to vacate certain other related orders made on the same day.

This proceeding centers upon and revolves around the occurrences of June 26, 1964. The background is tedious but most of it essential to understanding of the problems before us.

Prior to said June 26, 1964, there were three actions pending in Los Angeles Superior Court which are designated by petitioners' counsel as Theriot 1, Theriot 2, and Theriot 3, respectively, each being entitled "*John R. Theriot, Plaintiff, v. Milton H. Durand, et al., Defendants,*" numbered respectively 669675, 838617, and 840251 on the records of said

---

*Retired Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

superior court. Theriot 1 (No. 669675) was filed on November 15, 1956, and sought an accounting and damages from Durand based upon a charge of fraud; this resulted in judgment for plaintiff against Durand on January 29, 1964, in the sum of $108,233.78 plus costs. Atlantic has never been a party to that action.

Prior to rendition of that judgment Atlantic made a loan of $600,000 to Durand and others for construction of Brasilia Motel in Pomona, California; the loan was secured by a trust deed on four parcels of real property, *viz.*, Parcel One, the motel site; Parcel Two, Durand's residence; Parcel Three, an apartment house belonging to Durand; and Parcel Four, residence of one Johnson, a partner in the Brasilia venture. The loan was also secured by assignment and pledge of a note for $439,338.07 secured by second trust deed upon property of Sky Villa Motel, a limited partnership, which note and trust deed had belonged to Durand. Prior to August 1963 four additional loans were made by Atlantic to Durand and his associates in the Brasilia venture, aggregating $190,000 in principal amounts and made for the purpose of completion and furnishing of Brasilia Motel; they were secured by the original $600,000 trust deed. Total $790,000. For practical reasons these loans were shifted a bit, resulting in an unpaid balance of principal of $780,000 at the time of filing of petition herein.

On February 27, 1964, garnishment based upon said judgment in Theriot 1 was served on Atlantic which answered that it was not indebted to defendant but did have in its possession and under its control personal property belonging to defendant, adding ". . . to wit: However, the Association is the Assignee of a Note in the original amount of $439,338.07 dated December 22, 1960 secured by Deed of Trust recorded in Book T1602 Page 507 Official Records of Los Angeles County, California, as security for a loan and repayment of a Note, which has an unpaid principal balance of $779,-587.49 as of November 5, 1963."

Then Durand defaulted upon all his trust deed loans and Atlantic noticed a foreclosure sale under the power contained in the trust deeds covering Parcels Two and Three, sale being set for May 15, 1964. On the 14th of May Theriot 2 was filed and served on Atlantic. It sought damages and an injunction against the sale of Parcels Two and Three upon the claim that they had been made in violation of a restraining order issued in Theriot 1 pursuant to stipulation of Sep-

tember 6, 1962.[1] A temporary restraining order and order to show cause re temporary injunction issued against said contemplated sale of Parcels Two and Three, returnable on May 29, 1964, in Department 54 over which Judge Otto Emme presided at all times pertinent to this proceeding.

On May 21, 1964, more than five days before the scheduled hearing, petitioner Oksner as attorney for Atlantic filed in said Theriot 2 a declaration of disqualification of said Judge under section 170.6, Code of Civil Procedure, and said motion to disqualify was granted, the order to show cause being transferred to department 15 for hearing on June 10.

Atlantic then elected to sell under power of sale contained in its pledge agreement the Sky Villa note and trust deed, sale set for June 12, 1964, and it served notice thereof upon plaintiff Theriot.

The order to show cause in Theriot 2 came on for hearing in department 15 on June 10 and the moving party Theriot withdrew his application for a preliminary injunction because, as ''he stated he could not make the required bond, even if the injunction was granted.'' The court placed the application off calendar and dissolved the temporary restraining order. Thus Atlantic was brought to June 11, 1964, without any restraint upon its proceeding with its previously noticed sales and with an affirmative showing upon the record that plaintiff Theriot was unable or unwilling to give the customary bond to protect the enjoined party if the sales were thus blocked. However, the bond problem was bypassed on that day through obtaining from the judge in Theriot 1 an ex parte ''Order of Court in Aid of Execution'' directing the sheriff to ''pick up at the office of Atlantic Savings & Loan Association the above described note and deed of trust and return the same to the courtroom of Otto J. Emme, Judge presiding in Department 54 of the Superior Court of the State of California, in and for the County of Los Angeles, and deposit the said documents with the Clerk of the said Court.'' The order was served upon Atlantic that

[1]Minute order made in said Theriot 1 on said date contains the following: ''LATER IN CHAMBERS: Upon stipulation of counsel, representing to the Court that a settlement has been reached in this matter, the cause is ordered off calendar. Counsel further stipulate and the court orders that if either party refuses to sign the written agreement, a judgment may be entered according to the terms of the agreement in this number case. Counsel further stipulate and the court orders that the jurors may be advised by telephone that they are excused from further attendance to these proceedings.''

same day and the officer was told that the note and trust deed were in possession of its attorneys, one of whom was petitioner Oksner. Whereupon the order was served upon him and he "believing the *ex parte* Order was in excess of the Court's jurisdiction, and void, refused to surrender the Note and Trust Deed." This order had no return date and Mr. Oksner hastily prepared and filed a notice of motion to vacate said ex parte order and a declaration of disqualification of the Judge under section 170.6, Code of Civil Procedure. The petition herein avers "On the face of the Notice of Motion, Oksner indicated that this was a 'special appearance' by Atlantic, since Atlantic had never been a party to Theriot 1 and had never been served with any papers or pleadings in that action until receipt of the *ex parte* Order of June 11, 1964." This motion was filed June 12 and returnable on June 22, 1964.

On June 12 Atlantic was served with summons, complaint and order to show cause for preliminary injunction in Theriot 3, which order contained temporary restraint against pledgee's sale of Sky Villa note and trust deed which was scheduled for that day. The order to show cause was returnable in department 54 on June 26, 1964. However, there being then no judicial restraint against same, the sales under trust deeds covering Parcels Two and Three proceeded and Atlantic bought the properties for the full amount of the lien on each.

*June 26, 1964.* Upon the calendar of department 54 was the order to show cause issued in Theriot 3 which restrained the Sky Villa sale. Oksner had filed on June 12 a declaration of disqualification of Judge Emme under section 170.6 and on June 15 Oksner had orally moved for an order of disqualification which was granted and the order to show cause continued for hearing in department 65 on June 26. On June 22 Oksner's motion to vacate the ex parte order of June 11 was transferred to department 1 and continued for hearing to July 20. On June 23 the attorneys for plaintiff Theriot advised Oksner that said motion to vacate had been transferred to department 54 for hearing by Judge Emme on June 26. This order was made without prior knowledge and without consent of Atlantic or its attorneys.

There was nothing before department 54 on that day in Theriot 1 or Theriot 2 except the motion to vacate the ex parte order of June 11 in Theriot 1. The three causes had not been consolidated nor had any attempt been made to that end.

However, a subpoena duces tecum had been issued in Theriot 3 and served upon Atlantic and Oksner requiring production in Department 54 on June 26 of said Sky Villa note and trust deed. This subpoena, as just noted, was issued in Theriot 3, the action in which the order to show cause was pending and was not issued in Theriot 1, the action to which Atlantic was not and had not been a party.

Upon call of the matter Oksner immediately made an oral motion for disqualification of the Judge based upon the declaration previously filed on June 12; the motion was presented and denied. Oksner argued that the motion was good and any action taken by the Judge would be in excess of jurisdiction and void. Mr. Burum, his opponent, contended that a disqualification could be urged under section 170.6 only by a party and that Atlantic was not a party to Theriot 1. Oksner urged that the only matter before the court was his motion to vacate the ex parte order of June 11 and that Atlantic certainly was a party to that special proceeding and the order was invalid in the first place. Burum insisted that the statute was confined to parties and that Atlantic had no standing to urge such a motion; also that section 128, Code of Civil Procedure, confers upon the court express power to enforce all orders made by it even if that involves third persons. The court denied the disqualification. After the ruling Oksner declined to proceed with his motion to vacate.

Opposing counsel then referred to the subpoena duces tecum which had been served in connection with his order to show cause in Theriot 3. Oksner reiterated that no subpoena in Theriot 1 had been served, "which again is the only proceeding that is before this court, this morning." The Judge suggested a continuance of plaintiff's order to show cause and Mr. Burum remarked "the problem with such a solution to that is the danger of loss because of the valuableness of the document we are concerned with. This would be fine providing that there was a proper restraining order, which the Court has the power to give in connection with supplemental proceedings, . . .

"Mr. Oksner: . . . It seems to me that under these circumstances, your Honor, it might be well to continue the hearing on the motion to vacate because after all Mr. Burum's concern about the value of the note and deed of trust is not really the real problem, your Honor. We are just as concerned about its value as he is, and we are concerned about it because we do not want to let it out of our hands and into his, we are not about to do that, to let that note get lost. It is a

three hundred some thousand dollar balance and I am sure we are perfectly competent to take good care of it in the meantime.

"Mr. Burum: That might well be so. However, the Court has ordered and ruled, and it has validly ordered in this particular order that it be turned over to the custody of the clerk, not to me, to the custody of the Court for safekeeping, . . .

"Is it your position they haven't been served?

"Mr. Oksner: . . . I will make an answer to counsel's question and then, again not trying to be disrespectful or rude, I am going to leave this courtroom, sir.

"It is my position that Atlantic Savings likewise was not served with a subpoena duces tecum in *Theriot* v. *Durand,* 669, 675 (Theriot 1).

"Mr. Burum: . . . you have appeared before the Court on your own motion, and I think you will be in contempt of court if you walked out and disregarded the Court's order. That is already his rule and I don't think you have any choice, Mr. Oksner.

"Mr. Oksner: Well, your Honor, with all due respect to your Honor, that is the risk I think I have to take under the circumstances.

"The Court: You are ordered to remain here to proceed with the proceedings. The motion has been overruled. . . ."

The petition herein alleges without contradiction:

"At no time was petitioner Oksner ever disrespectful in his demeanor toward the court, nor did he use any improper or offensive language in stating his position to the court in behalf of his client Atlantic, nor is any such conduct alleged in the commitment."

. . . . . . . . . . . .

"The Court: You are ordered to remain here to proceed with the proceedings. The motion has been overruled.

"Mr. Oksner: Well, your Honor, I am sorry but I will respectfully actually decline to proceed. May I point out something else to your Honor. I do know there is a hearing, an Order to Show Cause and temporary restraining order set in Department 65 at 9:30 this morning. That is the hearing on the plaintiff's application for a preliminary injunction to restrain the sale of the same note and trust deed that is involved here. Now, your Honor has disqualified himself in that action.

"The Court: That is right.

"Mr. Oksner: Now, . . . if in the hearing in Department 65 at 9:30 the temporary restraining order is vacated and the preliminary injunction denied, of course Atlantic will be free to hold its pledgee's sale; but if here the plaintiff can force Atlantic to produce that note and trust deed and get it out of Atlantic's possession, they will effectively have blocked that sale even though the preliminary injunction is denied. . . . The real issue is whether or not Atlantic Savings should be permitted to go forward with that sale. That is the question that is going to be heard in Department 65 at 9:30.

"Now, if your Honor goes along with counsel's position you are permitting them to pervert the whole purpose of this Court's powers by accomplishing in a lefthanded backward way what they may not be able to accomplish legitimately in Department 65, because obviously we can't hold a pledgee sale if the preliminary injunction is denied and if we don't have the note and deed of trust to sell. . . .

"Mr. Oksner: Again, your Honor, I suggest putting the matter over until after we have a chance to file our writ, until they have ruled on the companion matter in Department 65.

"The Court: Will you stipulate to holding this status quo until the writ can be determined? . . .

"Mr. Oksner: I think I should go forward with the hearing in Department 65 this morning, but what I am trying to say is, even if the preliminary injunction is denied in Department 65 so that the temporary restraining order is vacated, we would still not hold a sale or transfer or encumber that note until after a decision was made on this matter. . . .

"Mr. Burum: . . . I would be agreeable providing this Court would consider issuing a restraining order to that effect. We have to have a written order. . . . So, if the Court's Minute Order would provide, and you have this power under the code sections in supplementary proceedings, I believe, to issue a restraining order pending an action of this sort, separate and apart from the preliminary or temporary restraining orders.

"Mr. Oksner: . . . Such a temporary restraining order by your Honor would also be void. . . .

"The Court: Do you want to make a motion?

"Mr. Burum: Your Honor, we make a motion at this time that the Court enter a restraining order restraining the Atlantic Savings & Loan Association and their attorneys from disposing of the note and trust deed, a note secured by a trust deed in the original amount of $437,388.07, dated December

22, 1960. That said persons and organization be restrained from disposing of said note in any manner whatsoever. . . .

"The Court: That motion is granted. What date do you want? . . .

"The Court: Is the note present in court? . . .

"Mr. Burum: . . . Now, the note is present in the courtroom, before his Honor, under a subpoena duces tecum, though it might refer technically to another associate case by number; I think the Court, in compliance with his order and fulfillment of his order, should order this document be placed in custody of the Court, regardless of the statements of counsel that it is safe in their hands. Their conduct has not indicated that. They have taken directly diverted positions with respect to that piece of paper. So I see no reason why the Court should rely on statements that are made even off the record.

"The Court: The Court orders delivery of the note in question to the Clerk of this Court.

"Mr. Oksner: I am sorry, your Honor, I must refuse.

"The Court: The Court holds counsel in contempt of court and orders the bailiff to take charge and hold him until such time as he delivers the note to the Clerk. The Court further orders that he be sent to the County Jail and ordered placed in the custody of the Sheriff of the County of Los Angeles until such time as the note is delivered to the Clerk of this Court."[2]

Three points present themselves for solution:

1. Is the judgment of contempt void;

2. Is the order requiring Atlantic to deliver its valuable security to the clerk of the court in excess of jurisdiction;

3. Was the temporary injunction against sale of the Sky Villa note and trust deed, which was made without notice, for an unlimited period, without requiring bond and without any showing of real cause for such interference with Atlantic's dominion over its own property, an exercise of discretion lying within the jurisdiction of the court?

The law is well settled to the effect that refusal to obey a void order of court is not a contempt and cannot be punished as such. (*Kreling* v. *Superior Court*, 18 Cal.2d 884, 885 [118 P.2d 470]; *Ex parte Brown*, 97 Cal. 83, 85 [31 P. 840]; *Ex parte Clarke*, 126 Cal. 235, 240 [58 P. 546, 77 Am. St. Rep. 176, 46 L.R.A. 835].)

---

[2]The entire discussion is set forth in Appendix to Petition for Writ at pages 40-54 thereof.

■ The order to Mr. Oksner to surrender the note and trust deed was made in an action which was not then before the Judge; it was produced in court pursuant to subpoena duces tecum issued in the action which was then on for hearing in department 65 upon the order to show cause re temporary injunction against sale of the note and trust deed. However, the fact that these instruments were then shown to be in the court room made it lawful for the Judge, regardless of how they happened to be there, to require their production for any proper purpose,—such as use in examining a witness (*Morehouse* v. *Morehouse*, 136 Cal. 332, 337 [68 P. 976]; 54 Cal.Jur.2d § 17, p. 231), but the discussion of counsel above quoted plainly shows that the object of plaintiff's attorney in seeking a surrender of the note and trust deed was to prevent their sale under the power of the pledge agreement, the very matter that was involved in the motion to be heard that same morning before another judge in department 65. So far as appears the object of the judge of department 54 was the same as that of counsel.

There is a real distinction between requiring production of a document for testimonial or other evidentiary purposes and its seizure for purpose of impounding same, especially when it does not belong to and is not claimed to belong to the judgment debtor.

*Ex parte Clarke*, 126 Cal. 235 [58 P. 546, 77 Am.St. Rep. 176, 46 L.R.A. 835], reaches to the fundamentals of the present problem. It held that a corporate secretary could not be adjudged in contempt for refusing to produce his company's books in court in the absence of a showing that they contained matter material or pertinent to the issues in the action wherein they were sought. At page 238 the court said:

''The question here presented is of great importance to all citizens, for it involves the constitutional right of the people to 'be secure in their persons, houses, papers, and effects against unreasonable seizures and searches.' (Const. art I, § 19.) To compel a person to deliver his books and papers to another who does not claim any ownership in them is to violate the sanctity of most important private rights, and is not to be tolerated except when warranted by some law clearly not inconsistent with the constitutional provision.'' See also *Lewis* v. *Chamberlain*, 108 Cal. 525, 527 [41 P. 413]; *McDowell* v. *Bell*, 86 Cal. 615, 616 [25 P. 128]; *McClatchy Newspapers* v. *Superior Court*, 26 Cal.2d 386, 396 [159 P.2d 944]; *Letz* v. *Letz*, 123 Mont. 494 [215 P.2d 534, 540].

*State* v. *Smithmeyer,* 110 Kan. 172 [202 P. 638, 639-640]: "While the production of the documents in obedience to a subpoena duces tecum did not violate section 15 of the Bill of Rights of the Constitution of this state, the retention of those documents by the Attorney General after the witnesses had been examined and discharged is an altogether different question. . . .

"The rule appears to be clear and well settled that one who procures or compels the production of papers cannot take the custody of those papers from the person producing them. The statute under which the Attorney General was proceeding did not authorize him to retain possession of the documents after the examination of the witnesses had been completed. It necessarily follows that when the Attorney General was through with his examination of the witnesses he should have returned the books and documents to the witnesses who had produced them."

*In re Atlas Lathing Corp.,* 176 Misc. 959 [29 N.Y.S.2d 458, 460]: "The power to subpoena a record for pertinent examination does not imply any concomitant right of seizure.

" 'The rule appears to be clear and well settled that one who procures or compels the production of papers cannot take the custody of those papers from the person producing them.' *State* v. *Smithmeyer,* 110 Kan. 172, at page 176 [202 P. 638, 640]." See also *In re Randell,* 87 App.Div. 245 [84 N.Y.S. 294, 295]; *Annenberg* v. *Roberts,* 333 Pa. 203 [2 A.2d 612, 617].

Volume 79 Corpus Juris Secundum section 34, page 798: "Seizure and retention of a corporation's books and papers under the guise of a subpoena duces tecum are within the prohibition of the constitutional guaranty."

Section 35, page 799: "To compel an individual to produce evidence, under penalties if he refuses, is in effect a search and seizure, and, unless confined to proper limits, violates his constitutional right to immunity in that respect. . . . and a court is not justified in abusing its process in order to secure the production of evidence where such abuse of process constitutes the equivalent of an unlawful search and seizure."

. Volume 97 Corpus Juris Secundum section 25, page 395: "Books or papers produced in obedience to a subpoena duces tecum remain under the control of the person producing them, and he cannot be required to deposit and leave the same with a commissioner or officer who is conducting the examination, or the clerk of the court, but they must be returned to him

after such use or examination of them as may be necessary and proper has been made."

Plainly this note and trust deed were not needed or wanted for evidence; they were recorded documents and all pertinent facts were already in the record. The objective was stopping, without a bond which plaintiff Theriot confessedly could not or would not raise, Atlantic's sale under its pledge agreement. Moreover it was not claimed or suggested that they were not claimed to be the property of Atlantic to the extent of its special lien as pledgee of same. Speaking of levy of execution upon pledged property 19 California Jurisprudence 2d section 106, page 489 says: ''The writ is therefore levied in the same manner as prescribed by statute in other cases where personal property is in the possession of third persons, and the lien created by the levy is of course inferior to that of a bona fide pledgee.''

Due process forbids the seizure of one man's property for satisfaction of the debt of another. ''A judgment creditor is, of course, entitled to subject to his judgment only property which belongs to his debtor, and the property of third parties is not subject to levy under writ of execution or attachment issued to enforce a claim against the defendant. Therefore, property of a third person which is merely in the debtor's possession is not liable for the satisfaction of his obligations.'' (19 Cal.Jur.2d § 62, pp. 416-417.)

This was not a supplementary proceeding and indeed presented none of the characteristics of one; (see 19 Cal.Jur.2d § 227, p. 680; Code Civ. Proc., § 715); it was merely ''an order of court in aid of execution of judgment,'' which Theriot's counsel attempts to justify as an exercise of the court's inherent power to enforce its judgments. Even if it were a supplementary proceeding, section 719, Code of Civil Procedure, would condemn such an order for it says ''no such order can be made as to money or property in the hands of any other person or claimed to be due from him to the judgment debtor, if such person claims an interest in the property adverse to the judgment debtor or denies the debt.'' Without this statutory prohibition such an order would offend due process. The adverse claim of the third party (Atlantic) requires resort to an equity suit where it can be fully tried upon its merits and not summarily disposed of as in a supplementary proceeding. (*Ex parte Hollis,* 59 Cal. 405, 413; *High* v. *Bank of Commerce,* 103 Cal. 525, 527 [37 P. 508]; *Lewis* v. *Chamberlain, supra,* 108 Cal. 525, 527; *Bond* v. *Bulgheroni,* 215 Cal. 7, 10 [8 P.2d 130]; *Takahashi* v. *Kuni-*

*shima,* 34 Cal.App.2d 367, 372-373 [93 P.2d 645] ; 19 Cal.Jur. 2d § 229, p. 684; § 240, p. 709.)

 Reliance by respondent upon Code of Civil Procedure, section 128, subdivision 4, is misplaced. It says: "Every court shall have power: . . . To compel obedience to its judgments, orders, and process, and to the orders of a judge out of court, in an action or proceeding pending therein." But this power does not extend to application of the property of a third person to the debt of another without previously affording a full hearing to said third person. Due process forbids and it protects the claims of a pledgee as well as any other adverse claimant (*Farmers & Merchants Bank* v. *Bank of Italy,* 216 Cal. 452, 454-458 [14 P.2d 527]).

*Blake* v. *Blake,* 86 Cal.App. 377, 381 [260 P. 937] : "While the remedy by supplementary proceedings, where property may be reached, is intended as a substitute for a creditor's bill, these proceedings do not supersede the remedy by action where the grantee or transferee of a judgment debtor asserts title in himself for the reason that they are not adequate to accomplish the purpose of the action. The reason is, that to make an order directing the application of property claimed by a person in his own right, if it could have any effect, would be to deprive him of his property upon a summary proceeding and without due process of law (11 Cal.Jur., p. 157)."

*Lewis* v. *Chamberlain, supra,* 108 Cal. 525, 527 : "I think it is entirely clear upon the face of the statute that no order could be legally made requiring Mrs. Morse or Mrs. Conklin to surrender the property mentioned in the affidavit of the plaintiff, and its application in satisfaction of his judgment, otherwise than upon their admission that it was the property of the judgment debtor. To make such order in relation to property which they claimed to own in their own right, if it could have any effect or operation, would be to deprive them of their property upon a summary proceeding and without due process of law. If the plaintiff claims or believes their title under the conveyances mentioned in his affidavit to be invalid, an issue as to such ownership and title should be properly made and tried in an appropriate action, in which the verdict of a jury or the findings of a court may be regularly had determining those questions, and upon which a judgment could be regularly entered by which the parties would be conclusively bound. But this precise question has been decided by this court in *McDowell* v. *Bell,* 86 Cal. 615 [25 P. 128], where, under facts similar to those involved in

this case, the court below granted the order subjecting property to the satisfaction of the judgment, and this court held that in granting such order the court below exceeded its jurisdiction; that 'his only power in the premises was to make an order authorizing the judgment creditor to institute an action in the proper court' for the recovery of the property, and granted a writ of prohibition restraining the enforcement of the order.''

*Colyear* v. *Superior Court*, 40 Cal.App. 462, 464-465 [181 P. 74]: ''It is perfectly clear that petitioner claimed an interest in the property adverse to Mitchell by virtue of his lien thereon as a warehouseman for the storage of the property consigned to him by one who, in so far as this record shows, was at the time of the consignment in the lawful possession thereof. The law does not authorize the trial of the rights of a third party claiming property adverse to a judgment debtor in this summary manner. . . .

''The court acted in excess of its jurisdiction in making the order requiring petitioner to deliver possession of the property to plaintiff in said action. [Citations.] Hence it follows that the violation of such order constitutes no warrant for adjudging petitioner guilty of contempt and imposing punishment therefor.'' See also 33 Corpus Juris Secundum section 378c, page 692; section 383c, page 700.

We conclude that the order requiring Atlantic and its attorney to surrender the note and trust deed to the clerk of the court was made in excess of jurisdiction and is void.

The order made by the court on June 26, 1964, enjoining sale of the Sky Villa trust deed note must meet the same fate. It provides that Atlantic, its attorneys, agents and employees be restrained ''from disposing of the note secured by deed of trust in the original sum of $437,388.07, dated Dec. 22, 1960; that said persons and organization be restrained from disposing of said note in any manner whatsoever; that the matter be continued for a period of 60 days to Aug. 26, 1964 at 9:00 A.M. with the provision that, in the event a determination is made by the appellate court, the matter be advanced for hearing at that time is granted.'' The period of the injunction (termed restraining order in the minutes) is indefinite, certainly exceeds the statutory period of ten days permissible for a restraining order (see 27 Cal.Jur.2d § 76, p. 198) when made without previous notice as in this instance. (Code Civ. Proc., § 527.) An injunction order made under section 720, Code of Civil Procedure, in a supplementary proceeding requires no bond

(*Pioneer Investment etc. Co.* v. *Muncey,* 33 Cal.App. 740, 743 [166 P. 591]; 19 Cal.Jur.2d, § 229, p. 687), but an injunction designed to preserve the status quo during the pendency of an action to set aside a fraudulent conveyance, as here, falls under section 529, Code of Civil Procedure, and does require a bond—one such as plaintiff Theriot had on June 10 declared himself unable to post. Without the bond a preliminary injunction is a nullity. (*Federal Automotive Services* v. *Lane Buick Co.,* 204 Cal.App.2d 689, 695 [22 Cal. Rptr. 603]; 27 Cal.Jur.2d, § 70, p. 193.)

Moreover this injunction was made upon oral motion in open court without any previous notice such as required by section 527, Code of Civil Procedure, and that defect renders it void (see *Thompson & Holmes, Ltd.* v. *Superior Court,* 184 Cal.App.2d 306, 307 [7 Cal.Rptr. 386]) for it cannot be said that notice was waived in this instance; the motion was made on the spur of the moment and without any information given to Atlantic or its attorney prior to their appearing in court.

Before this injunction order or the contempt adjudication was made Atlantic had insisted upon the disqualification declared in its declaration previously filed under section 170.6, Code of Civil Procedure. The judge declined to recognize this challenge to his right to conduct the hearing and so far as this record shows or suggests the only conceivable basis for his so doing would be late filing of the declaration. On May 21, 1964, a like declaration had been filed in Theriot 2 and the same judge had granted the motion to disqualify. Likewise a similar declaration and motion had been upheld in Theriot 3 on June 15. Apparently that judge was not to hear Atlantic's motion to vacate the ex parte order of June 11 for it was transferred to Department One on June 22 for hearing on July 20; but on June 23 Theriot's attorneys advised Mr. Oksner that this matter, in Theriot 1, had been transferred to Department 54 for hearing on June 26,—this having been done without knowledge or consent of Oksner or his client. Thus their first information that the previously challenged judge actually would hear this matter was obtained only three days before the date set therefor. Section 170.6 says in subdivision (2) "Where the judge assigned to or who is scheduled to try the cause or hear the matter is known at least 10 days before the date set for trial or hearing, the motion shall be made at least five days before that date." Also "If the motion is directed to a hearing (other than the trial

of a cause), the motion must be made not later than the commencement of the hearing.'' In subdivision (3) ''Under no circumstances shall a party or attorney be permitted to make more than one such motion in any one action or special proceeding pursuant to this section; and in actions or special proceedings where there may be more than one plaintiff or similar party or more than one defendant or similar party appearing in the action or special proceeding, only one motion for each side may be made in any one action or special proceeding.'' Of course the 10 day provision did not apply in this instance and Mr. Oksner, having filed his declaration of disqualification on June 12, immediately upon the cause being called on the 26th made an oral motion for the Judge to disqualify himself on the basis of the declaration. There was and could be no element of surprise or negligence in this and the situation falls within the purview of *Spector* v. *Superior Court,* 55 Cal.2d 839 [13 Cal.Rptr. 189, 361 P.2d 909]. The court there said in part at page 842-843:

''December 21, 1960, the motion filed December 16, 1960, in proceeding No. 91313 and the order to show cause in proceeding No. 91688 were called at the same time on the law and motion calendar, with Judge Cotton presiding.

''Counsel for petitioner immediately requested that both matters be heard by Judge Millington (who was available), because the latter had issued the original injunction and had instructed the receiver and therefore 'was familiar with the background of the litigation.' Judge Cotton denied the request and ruled that he would hear the matters.

''Petitioner's counsel then promptly filed an affidavit of bias and prejudice as to each of the matters, requesting that Judge Cotton disqualify himself. Judge Cotton denied petitioner's request, on the ground that the affidavits of disqualification were filed 'too late.' . . .

''First. *Should Judge Cotton have disqualified himself under the provisions of section 170.6 of the Code of Civil Procedure when petitioner's counsel filed the affidavits of bias and prejudice against him?*

''Yes. He should have disqualified himself in proceeding No. 91688. . . .

''Applying the foregoing rules to the facts of the present case, it appears that petitioner's counsel, as soon as he knew that Judge Cotton was going to hear the matters before him, filed an affidavit of bias and prejudice against Judge Cotton

as to each of the matters, requesting that he disqualify himself. The record shows that petitioner's motion was made 'at the commencement of the hearing on December 21, 1960,' and that petitioner did not know prior to such date that Judge Cotton intended to hear these matters.

"Since the December 21, 1960 hearing was the first court hearing in proceeding No. 91688, it is clear that Judge Cotton was disqualified from taking further action in that proceeding and should have disqualified himself. (Cf. *Johnson* v. *Superior Court*, 50 Cal.2d 693 [329 P.2d 5].)'' See also *Thompson* v. *Superior Court*, 206 Cal.App.2d 702, 706, 710 [23 Cal. Rptr. 841] ; *People* v. *Smith*, 196 Cal.App.2d 854, 859 [17 Cal.Rptr. 330].

 The only other question that emerges from this record is whether we here deal with a proceeding which is a continuation or a supplement to one previously tried by the same judge and whether for this reason the challenge of disqualification was asserted too late.

*Jacobs* v. *Superior Court*, 53 Cal.2d 187 says at pages 190-191 [1 Cal.Rptr. 9, 347 P.2d 9] : "The question here is whether the motion was timely. Although the statute does not expressly so provide, it follows that, since the motion must be made before the trial has commenced, it cannot be entertained as to subsequent hearings which are a part or a continuation of the original proceedings. . . .

"If a disqualification were permitted under section 170.6 in matters which are continuations of a prior proceeding, it would mean that the judge who tried the case, and who is ordinarily in the best position to pass upon the questions involved, could by a mere general allegation of prejudice, and without any judicial determination of the facts, be disqualified from hearing such matters as motions for modification of a support order or an injunction, as well as motions for change of custody of children. Such procedure would make it possible for litigants to gamble on obtaining a favorable decision from one judge, and then, if confronted with an adverse judgment, allow them to disqualify him without presenting facts showing prejudice, in the hope of securing a different ruling from another judge in supplementary proceedings involving substantially the same issues." This case was explained and applied in *McClenny* v. *Superior Court*, 60 Cal.2d 677, 680-681, 684-685 [36 Cal.Rptr. 459, 388 P.2d 691]. See also *Stafford* v. *Russell*, 201 Cal.App.2d 719, 721

[20 Cal.Rptr. 112]; *Raff* v. *Raff*, *(Cal.App.) 37 Cal.Rptr. 155; *Eagle Maintenance & Supply Co.* v. *Superior Court*, 196 Cal.App.2d 692, 694-695 [16 Cal.Rptr. 745]; *Estate of Cuneo*, 214 Cal.App.2d 381, 385 [29 Cal.Rptr. 497]; *Oak Grove School Dist.* v. *City Title Ins. Co.*, 217 Cal.App.2d 678, 704 [32 Cal.Rptr. 288]; *People* v. *Paramount Citrus Assn.*, 177 Cal.App.2d 505, 511-512 [2 Cal.Rptr. 216].

In our opinion this situation clearly falls within the rationale of the *Spector* and *Jacobs* cases. It was a hearing upon Atlantic's motion to vacate the ex parte order of June 11, 1964; both that order and the motion to vacate were made in Theriot 1, a case to which Atlantic was never a party and in which no prior proceedings had been taken with respect to it. The statute refers to "anyone action or special proceeding," not to any series of actions. In no sense was this motion to vacate a continuation of or a supplement to anything previously done in said action Theriot 1. The fact that Atlantic had successfully challenged the same judge in two separate actions is immaterial.

■ It follows that the judgment of contempt and the order granting a preliminary injunction against the sale of the Sky Villa note and trust deed are void, not only for the reasons first above mentioned but also upon the ground that the Judge was disqualified under section 170.6, Code of Civil Procedure, and was without jurisdiction to make any orders with respect to Atlantic in said action known as Theriot 1.

Petitioners also seek an award of costs. This lies within the discretion of the court in a mandamus proceeding (*Kramer* v. *State Board of Accountancy*, 200 Cal.App.2d 163, 177 [19 Cal.Rptr. 266]; *Miles California Co.* v. *Hawkins*, 175 Cal.App. 2d 162, 164 [345 P.2d 492]; *Union Trust Co.* v. *Superior Court*, 13 Cal.2d 541, 543 [90 P.2d 582]). ■ Where a court or judge is named as respondent the award of costs cannot run against it or him if it be found that the proceeding was defended in good faith (Code Civ. Proc., § 1095; see also *Mc-Kelley* v. *Turner*, 96 Cal.App. 292, 295 [273 P. 1101]; 32 Cal.Jur.2d § 76, at p. 288); we find that such good faith was exercised here by court and judge. But this does not preclude award of costs (which do not include attorney fees, *Agnew* v. *Cronin*, 167 Cal.App.2d 154, 156-157 [334 P.2d 256])

---

*A hearing was granted by the Supreme Court on March 13, 1964. The final opinion of that court is reported in 61 Cal.2d 514 [39 Cal. Rptr. 366, 393 P.2d 678].

against an unsuccessful real party in interest (*Lerner* v. *Superior Court*, 38 Cal.2d 676, 686-687 [242 P.2d 321]).

So far as concerns the annulment of the contempt order on certiorari the result is the same. Though costs flow automatically in favor of a successful respondent, (*Miles California Co.* v. *Hawkins, supra*, 175 Cal.App.2d 162, 165) they will not be imposed upon the court or judge (*Platnauer* v. *Superior Court*, 33 Cal.App. 394, 395 [165 P. 41]).

Hence costs should be awarded petitioners against real party in interest, John R. Theriot, upon both certiorari and mandamus petitions.

The judgment of contempt and commitment therefor are annulled and a permanent writ of mandate will issue directing the lower court to vacate the oral and written orders of June 11, 1964, and June 26, 1964, requiring petitioners Oksner and Atlantic Savings and Loan Association to deliver possession of said Sky Villa note and trust deed to the clerk of the court and also directing said court to vacate the order of said June 26, 1964, enjoining Atlantic from disposing of said note and trust deed.

Costs are awarded petitioners against real party in interest John R. Theriot with respect to writ of certiorari and writ of mandate.

Fox, P. J., and Roth, J., concurred.